R. M. Thompson et al. v. G. G. Kelly et al.

Decided June 28, 1907.

**1.—Weight of Evidence—Province of Jury.**

Upon the trial of a suit to determine the boundaries of certain conflicting surveys, it was reversible error because upon the weight of the evidence, for the trial judge to remark in the hearing of the jury that he considered certain calls in the fieldnotes of said surveys as merely descriptive and not locative and as of the very least importance if of any importance at all. Under our system of jurisprudence the jury are the exclusive judges in all cases of the weight of the evidence.

**2.—Boundary—Charge upon Weight of Evidence.**

In a boundary suit, the evidence being conflicting as to the location of the lines and corners of the surveys in controversy, it was error for the court because upon the weight of the evidence, to charge the jury that the lines and corners of the surveys might be located in a certain way, indicating how. In such cases, however, the facts may be grouped and the jury instructed that if they believe from the evidence that such facts exist they should find for the plaintiff or the defendant, as the case might be.

Appeal from the District Court of Wharton County. Tried below before Hon. Samuel B. Dabney, special judge.

*W. S. Brooks* and *N. A. Rector,* for appellants.

*G. G. Kelley, Dennis & Dennis* and *W. L. Hall,* for appellees.

PLEASANTS, Associate Justice.—The nature and result of this suit, as stated in appellants' brief, said statement being concurred in by appellees, is as follows:

This was a suit instituted in the District Court of Wharton County for two 640 acre tracts of land patented to A. J. Dunlap. The lower Dunlap, patent No. 143, was alleged to belong to Mrs. M. L. Kelly in her own separate right, and the upper survey, patent No. 144, was alleged to belong to plaintiff G. G. Kelly and his wife, M. L. Kelly, in community; and defendant Madray was alleged to own an undivided one-eighth of this survey. The suit for these lands was originally two separate suits in trespass to try title, but on motion were consolidated and prosecuted to judgment in the name of G. G. Kelly et al. v. M. J. Farrar et al. J. H. Burns was alleged to be the owner of section No. 3, Houston, East & West Texas Railway Company, lying east of these surveys, and was made a defendant. Thompson and Forgy were alleged to own the Gulf, Colorado & Santa Fe Railway surveys on the west, and F. P. Alcott was alleged to own the Houston & Texas Central Railway surveys, also on the west. He was also made defendant, and the lessees of Thompson

and Forgy, R. D. and J. W. Ragsdale, were also made defendants. A number of parties originally made defendants were dismissed from the suit, and judgment by default was rendered and made final against other defendants. The pleadings of the plaintiffs were in the usual ·form of trespass to try· title, with the further allegation that there was a dispute between the plaintiffs and the defendants, Burns, Forgy, Thompson and Alcott as to the location of plaintiffs' surveys. The pleadings of each of these defendants were general denial and not guilty, and a disclaimer as to any part of the land sued for, save and except the land embraced in their respective surveys; and as to the land claimed by them they prayed judgment for same and for costs. The plaintiffs' petition in the consolidated suit did not attempt to define their surveys as they lie on the ground further than to set out the field notes embraced in the patents. The answers of Forgy and Thompson specially define their respective surveys as they are located on the ground by recognized corners and monuments. The consolidated cause was tried by a jury, and resulted in favor of the plaintiffs and defendant Madray against Thompson and Forgy, placing plaintiffs' surveys in conflict with defendants' surveys to the extent of 1,426 varas from east to west. Verdict and judgment was in favor of defendant Alcott, and practically so as to said Burns. Thompson and Forgy joined in motions for a new trial, jointly assigned errors, jointly executed bond, and now jointly present briefs in this court, and are the only appellants. The surveys of said Thompson were the locations for the individual owner of said Gulf, Colorado & Santa Fe Railroad Company, and defendant Forgy owned the alternate surveys located for the school fund to said Thompson's surveys; and their defense is the same in every particular.

The two Dunlap surveys owned by appellees were located long prior to the location of the surveys owned by appellants, and the only issue in the case is as to the true location of the Dunlap surveys. These surveys are described in the patents as being on the main Sandy Creek in Jackson County, and are known as the lower and upper Dunlap surveys. The field notes of the lower Dunlap are as follows:

"Beginning at a stake in open prairie, from which a scrubby live oak marked 'X' bears N. 44 W., 153 varas. Thence W. 200 varas to timber, 906 varas to the N. E. corner of lands granted to W. J. Wickham, 1900 varas to the S. W. corner of this survey at the edge of the prairie on the west side of Sandy Creek. Thence N. 1,900 varas to corner in prairie. Thence E. 1,360 varas to the S. W. corner of a tract of 640 acres surveyed for this warrant, in timber, 1900 varas to the corner of this survey, a live oak marked 'X' at the edge of bottom timber on the east side of the creek. Thence 1900 varas, through black jacks and post oaks, south to the beginning."

The upper Dunlap is thus described by its field notes:

"Beginning at a stake in the open prairie, from which a black jack 10 in. in dia. at the edge of timber marked X bears W. 1000 vrs. Thence W. 1000 varas to timber, 1380 vrs. to live oak at

the edge of bottom timber, marked 'X' to the N. E. corner of lower survey of same land warrant, 1900 vrs. to the corner of this survey. Thence north 1900 vrs. to the N. W. corner of this survey on the west side of Sandy Creek. Thence east 1202 varas to the S. W. corner of the land surveyed for E. & H. Bolton, 1900 varas to the N. E. corner of this survey in rough, burnt thicket on the E. side of creek; from which a charred live oak stump marked "X" brs. N. 2 varas, and a clump of large live oaks, the largest marked "X" bears S. 20 E. and a live oak at the edge of the open prairie brs. S. 81½ E. Thence S. 1900 vrs. to the beginning."

None of the corners or lines of these surveys can be identified upon the ground ·by any original marks or objects called for as corners. The evidence offered by the appellants shows that if these surveys are located in accordance with the calls in the field notes by starting from a stake in the open prairie and running west the distance called for to the timber the N. E. and S. E. corners of both surveys would be east of Sandy Creek, and the location of their west lines would not be where they are claimed to be by the plaintiffs. This was one of the main points which appellants sought to establish. While counsel for appellants was cross-examining one of plaintiffs' witnesses on this point, the trial judge interrupted him and stated in the hearing and presence of the jury that the calls in the field notes of the Dunlap surveys for distances to the creek and to timber were passing calls and were of little or no force in locating the corners of the surveys. This remark of the judge was excepted to by the attorney for appellees and a bill of exceptions reserved. After stating the facts showing the materiality of the testimony the bill contains the following statements:

"And during this examination the court more than once remarked to counsel, and to and within the hearing of the jury, that he considered the calls in the field notes of any of said surveys for their corners as being east of the creek as merely descriptive and not locative; and that the calls for the prairie and timber were also descriptive calls and not locative, and that time ought not to be consumed in such examination, because said testimony as to whether or not said calls were east or west of the creek, or as to whether or not they were in the prairie or timber could have no bearing upon the location of said surveys, because they were merely descriptive, and of the very least importance, if of any importance at all.

"And whereupon the counsel for defendants excepted to the remarks of the court as being upon the weight of the testimony and improper in the hearing of the jury, and stated to the court that in their opinion said calls were of great importance inasmuch as it had been shown by plaintiffs that none of the corners of the said Dunlap surveys were found on the ground, and none of its lines could be found; and that therefore said surveys must be established from all of the testimony of the case.

"The court thereupon further remarked that he did not agree with counsel and thought the testimony was of the very least importance, if of any importance at all.

"Whereupon counsel excepted to the remarks of the court for the reasons stated, and here now tenders this their bill of exceptions and prays that the same may be examined and approved by the court, and made a part of the record, which is accordingly done."

This bill was approved by the judge with the following qualifications:

"This bill is approved with this modification. During the introduction of the plaintiffs' testimony, on cross-examination of plaintiffs' witness, or witnesses, by defendants' counsel, Mr. Rector, questions were asked the witness (or witnesses) by the cross-examiner in regard to distances from corners of the creek and perhaps timber and other intermediate objects called for between corners in the original field notes. My recollection is that I stated to counsel that these were passing calls, and intimated that they were of little or no force in locating the corners. No objection was then made. Subsequently the same course of interrogatories being continued, my recollection is, that I made the statement again and more clearly perhaps, that these passing calls were of little or no force, and Mr. Rector excepted. The statement was made, I think, in connection with the course of the interrogatories, comparing distances from corners as called for in the field notes with distances to these intermediate objects called for as facts found by the surveyor being examined. I agree with the statement of the bill that my position was that these calls were descriptive. I did not consider them determinative of the positions of corners by measuring from them, being passing calls. Subsequently and during the remainder of the trial the defendants examined witnesses at great length as to distances from corners to those intermediate calls, without objection or remark from me. My remark objected to, used the term "passing calls" and was limited to them. My views upon this point are given in the general charge. I do not approve this bill wherein it states or intimates that I stated before the jury that these calls were of little or no importance, although the witness being examined disregarded them so as to put a corner or survey E. or W. of an object called for, instead of putting the object called for between the corners or at the corners according to the field notes, or a corner in the woods, instead of in the prairie, and vice versa."

We do not think the qualification by the judge materially changes the bill. If under the evidence in this case the court had instructed the jury that these calls in the field notes for distance to the creek and timber were mere passing, descriptive calls and entitled to little or no force, such charge would have been clearly obnoxious to the rule which forbids the judge to intimate to the jury his opinion as to the weight of any of the evidence in the case. Remarks by the judge in the hearing of the jury indicating his opinion upon the weight of the evidence are as well calculated to influence their decision as if such opinion was expressed in the written charge of the court.

Under our system of jurisprudence the jury are the exclusive judges of the weight of the evidence in all cases submitted to them, and the litigant whose case is tried by a jury is entitled to have

the evidence submitted to them without any intimation from the judge of what his opinion is upon its weight, and when this right is invaded either by the charge of the court or by remarks made by the judge in the hearing of the jury the litigant has just ground of complaint. The evidence was clearly admissible and should have gone to the jury without any intimation from the judge of his opinion of its weight, that question being one exclusively in the province of the jury. We think the first assignment, which complains of these remarks of the trial judge in the presence and hearing of the jury, should be sustained. 21 Ency. Pl. & Prac., 994, and authorities there cited.

The evidence offered by plaintiffs presented three theories upon which the Dunlap surveys might be located. If the surveys are located upon either of these theories they will conflict with the surveys owned by appellants. The court submitted each of these theories to the jury. Under appropriate assignments of error appellants complain of the paragraphs of the charge submitting plaintiffs' theories of the location of the surveys, on the ground that they are upon the weight of the evidence. The first paragraph of the charge complained of under these assignments is as follows:

"The two Dunlap surveys may be located in the following positions: The lower Dunlap survey: Begin at southwest corner of this Dunlap survey on the upper line of the upper or northern Wickham, in a position claimed for it by plaintiffs, 1026 varas from its northwest corner as claimed by the plaintiffs · (which claimed northwest corner of the Wickham survey is now marked by a corner in a fence running north and east, and which corner is N. 4194 varas from a point to be found by running E. 1900 varas from the E. line of the Cottle survey on the N. line of that A. J. Dunlap survey which lies in the forks of Sandy and Golden Rod Creeks). Thence run E. 1900 varas, a portion of the distance with the N. line of the N. or upper Wickham survey, in a position in which plaintiffs claim it to be, to S. E. corner of said lower Dunlap ·survey and S. W. corner of the H. E. & W. T. survey No. 3; thence N. 1900 varas with the line of the H. E. & W. T. survey No. 3 to its N. W. corner for the N. E. corner of this Dunlap survey on the lower line of the upper Dunlap survey, in a position in which plaintiffs claim it. Thence W., a portion of the distance with the said lower line, 1900 varas to the N. W. corner of this lower Dunlap survey. Thence S. 1900 varas to corner and beginning.

"The upper Dunlap survey: Begin at a point on the N. line of the lower Dunlap survey, located as above, 1360 varas east from its northwest corner. Thence E., a portion of the distance with the said N. line of the lower Dunlap survey, 1900 varas, to a corner. Thence N. 1900 varas to a corner, the northeast corner of the upper Dunlap survey, thus placed. Thence W. 1900 varas to northwest corner; thence S. 1900 varas to the beginning."

Appellants' objection to this charge must be sustained. In telling the jury that they might locate the surveys in the manner indicated in the charge the court, in effect, said to them that in his opinion the evidence was sufficient to sustain plaintiffs' theory of the

manner in which the locations should be made. The issue of whether the evidence is sufficient to authorize the location in the manner indicated is not left to the determination of the jury, but the charge assumes its sufficiency and tells the jury they may so find.

If a group of facts in evidence in any case establishes as a matter of law the right of either party to a verdict it is proper for the trial court to group such facts in the charge and submit them to the jury with the instruction that if the jury believes from the evidence that such facts exist they should find for the plaintiff or the defendant, as the case may be; but when the sufficiency of the facts so grouped to authorize a verdict is a question to be decided by the jury any intimation in the charge of the opinion of the court upon the question is a charge upon the weight of the evidence.

It would have been unobjectionable for the trial court to have instructed the jury that if they found from the evidence that the surveys could be located in the manner indicated and believed that they were originally located in this manner they should find for plaintiffs, but the charge given was, we think, clearly a charge upon the weight of the evidence. The other paragraphs of the charge complained of under these assignments are in the same form as the one above quoted and are subject to the same objection.

It is unnecessary to discuss the remaining assignments in detail. Other objections to the charge presented in the brief, if valid, do not point out errors that are likely to occur upon another trial.

In view of another trial it would be improper to discuss the assignments assailing the verdict as against the weight and preponderance of the evidence.

For the errors above indicated the judgment of the court below in favor of appellees against appellants is reversed and the cause remanded; as to the other parties to the suit the judgment is undisturbed.

*Reversed and remanded.*