HOUSTON & TEXAS CENTRAL RAILROAD COMPANY v. CHARLES P. SHAPARD.

Decided March 27, 1909.

**1.—Charge—Construction.**

One part of a charge may be looked to for the purpose of qualifying another.

**2.—Same—Submission of Issues.**

The rule that it is error to charge upon an issue not presented by the pleadings or evidence, has no application where the substance of the issue as stated by the charge is presented by both the pleadings and evidence.

**3.—Same—Harmless Error.**

The appellate court will look to the state of the proof in determining whether some slight error either of law or procedure is harmless; and the fact that the evidence strongly preponderates in favor of the verdict is of weight in such an inquiry.

**4.—Negligence—Collision—Open Switch—Railways—Charge.**

A railway company being charged with negligence in that a switch was left open and caused a collision, the court instructed as follows: "Guided by these instructions, if you believe from a preponderance of the evidence that the said switch being open and said train being so deflected, was the result of the negligence of defendant's servants in not properly closing the switch or in not keeping the same closed; and further believe that plaintiff's injuries, if any, were the direct result of the negligence, if any, of defendant's servants in regard to said switch, and that he did not assume the risk, then you will find for the plaintiff." Held, (1) the charge did not assume that the servants were guilty of negligence in not properly closing the switch, and, in view of another instruction to find for defendant if they believed that the switch being open was not the result of negligence of defendant's servants, could not have misled the jury; (2) there being no evidence presenting any ground for a distinction between "closing" and "properly closing" the switch, there was no error in submitting the issue of negligence in not properly closing it; (3) the charge did not assume negligence in not keeping the switch closed; (4) it being established beyond question by the undisputed testimony that the switch was open, error, if any, in submitting the issue of failing to keep it closed was harmless, for the jury must have found according to the undisputed proof.

**5.—Negligence—Burden of Proof.**

Charge in its entirety considered, and held not to shift the burden of proof and place it on defendant to show that the switch being open was not due to its negligence.

**6.—Evidence—Impairment of Mental Processes.**

Where counsel for the plaintiff, seeing that the latter in testifying stopped and apparently thought or studied before answering questions, asked why he did so, and the answer was that he did not know any reason except that his mind was not as accurate as it was before he was hurt, objection on the ground that the explanation was self-serving, and it was for the jury to determine from the appearance of the witness and his manner his credibility and the weight of his testimony, was properly overruled.

**7.—Same—Photographs Taken with X-Ray.**

Photographs of the bones of the plaintiff's injured leg, taken with an X-Ray instrument were admissible in evidence in connection with the testimony of an expert that the instrument used was a correct one of the kind and had been frequently used by the witness.

**8.—Same—Common Knowledge.**

It is a matter of common knowledge that photographic views of the bones of a living body by means of the X-Ray, when properly taken, accurately represent what they purport to show, and the courts may take cognizance of the fact.

**9.—Evidence—Comment by the Court.**

Where the defendant was examining its witness, and counsel for the plaintiff stated that he did not object to a question and answer but thought the question improper, a remark by the court that he did not think that the question was proper, afterwards explaining that he meant that the evidence was inadmissible, was improper but not, under the evidence, reversible error.

**10.—Charge—Submission of Defenses.**

While a defendant is entitled to a charge affirmatively presenting his defenses, the refusal of special charges so presenting them does not violate the rule when the substance and effect of the general charge is the same as those requested.

**11.—Same—Negligence.**

Charge considered and held to correctly submit the issue whether a switch

was left open by a servant of defendant or was tampered with after it was closed by him by some unauthorized person.

### 12.—Verdict—Personal Injuries—Excessive Damages.

Damages in the sum of twenty-five thousand dollars awarded by the verdict for personal injuries held, so unreasonably large in view of all the evidence as to indicate that the amount was not the result of a fair consideration of the evidence; and remittitur of seven thousand five hundred dollars required.

Error from the District Court of Harris County. Tried below before Hon. Norman G. Kittrell.

*Baker, Botts, Parker & Garwood* and *Lane, Jackson, Kelly & Wolters,* for plaintiff in error.—The appellant contends that a mere casual reading of the charge complained of in the above assignment readily discloses a distinct and fatal vice, wherein it assumes the negligence of the defendant's servants and employes in not properly closing the switch. The charge is correctly copied in the first assignment, and we here reproduce it, using italics to indicate that portion particularly complained of: "Guided by these instructions, if you believe from a preponderance of the evidence that the said switch being open and said train being so deflected was the result *of the negligence of defendant's servants and employes in not properly closing the switch* or in not keeping the same closed; and further believe that plaintiff's injuries, if any, were the direct result of the negligence, if any, of defendant's servants and employes in regard to said switch, and that he did not assume the risks, then you will find for the plaintiff and assess his damages as hereinafter instructed." Railway v. Finley, 11 Texas Civ. App., 64; Campbell v. Ellsworth, 20 S. W., 120; Johnson v. Railway, 2 Texas Civ. App., 139; Railway v. Eckols, 7 Texas Civ. App., 429; Overall v. Armstrong, 25 S. W., 440; Railway v. Davidson, 61 Texas, 204; Railway v. Smith, 63 S. W., 1064; Railway v. Felker, 93 S. W., 477; Railway v. Booth, 80 S. W., 121; Railway v. Wolf, 89 S. W., 778; Railway v. Williams, 17 Texas Civ. App., 675.

The said charge is erroneous and fatally defective upon the further ground that it submits to the jury the issue of negligence of the defendant's servants and employes "in not properly closing the switch," whereas, there is no allegation or complaint in the plaintiff's pleadings charging any negligence on the part of the defendant's servants and employes "in not properly closing the switch." In a negligence case especially, it is error for the trial court to submit in its charge to the jury an issue of negligence not raised or presented in the pleadings. Railway v. French, 86 Texas, 96; Loving v. Dixon, 56 Texas, 79; Railway v. Terry, 42 Texas, 451; Railway v. Powell, 41 S. W., 695; Sanches v. Railway, 88 Texas, 117; Hall v. Johnston, 6 Texas Civ. App., 116; Railway v. Vieno, 7 Texas Civ. App., 347; Insurance Co. v. Brown, 82 Texas, 631; Railway v. Silegman, 23 S. W., 300; Railway v. Walters, 107 S. W., 369.

If the said charge be not defective and erroneous in the particular pointed out in the first proposition, then the appellant contends that said charge is erroneous, misleading and confusing to the jury, in this: It submits to the jury the issue of negligence of the defendant's

servants and employes "in not properly closing the switch," whereas, there was no allegation in the pleading nor any evidence authorizing such submission. It is error to charge upon an issue not raised by the pleadings or the evidence, as it is calculated to impress the jury that, in the opinion of the court, such issue is properly raised, and that there is sufficient evidence upon which to warrant a finding of the same. Railway v. Rowland, 90 Texas, 370; Railway v. Wisenor, 66 Texas, 674; Railway v. Faber, 63 Texas, 344; Railway v. Gilmore, 62 Texas, 392.

The charge complained of in the second assignment is erroneous in that, in so far as it referred to the switch being open, which was the gravamen of plaintiff's complaint, it shifted the burden of proof and placed it on the defendant to show that the "switch being open at the time of the accident was not the result of negligence on the part of the defendant's servants and employes," before it would be entitled to a verdict at the hands of the jury on the question of the switch being open. The burden of proof was on the plaintiff to show that the switch being open was due to the negligence of defendant's employes, and it was error for the court to shift the burden of proof onto the defendant to show it was not open through its negligence in order to obtain a verdict in its favor.

The evidence having been admitted before the jury without objection from the plaintiff, it was prejudicial error for the court, in the presence and hearing of the jury, to voluntarily comment on the same by stating that the question was not proper, or that the evidence was inadmissible, because in doing so it was a comment on the weight of said evidence, and was calculated to impress the jury that, in the opinion of the court, such evidence, though admitted before them, was unworthy of their consideration. Thomson v. Kelley, 97 S. W., 326; Bath v. H. & T. C. R. R. Co., 78 S. W., 993; Lewter v. Lindley, 89 S. W., 784; Howeth v. Carter, 56 S. W., 539; Freiberg, Klein & Co. v. B. H. & S. I. Co., 63 Texas, 449; Smith v. Dunman, 9 Texas Civ. App., 319; Hynes v. Winston, 40 S. W., 1025; Sargent v. Lawrence, 16 Texas Civ. App., 540; 21 Ency. Pleading & Practice, page 994.

The court erred in admitting in evidence, over the objection of defendant, the negatives and photograph taken by means of an X-Ray instrument of the appearance of the bones of plaintiff's legs; because it was not shown by any competent evidence that such instrument would correctly display the bones of the leg through its coating of flesh and muscles, and because said evidence was irrelevant.

The requested charge presented a group of facts abundantly supported by the defendant's evidence authorized under its defensive pleading, and the defendant was entitled to have the theory of its defense as presented in said charge affirmatively submitted to the jury, the main charge nowhere submitting to the jury the defendant's theory, as embraced in said charge. Railway v. Rogers, 91 Texas, 58; Railway v. McGlamory, 89 Texas, 638; Railway v. Washington, 94 Texas, 510.

The enormous sum awarded by the jury in this case being so much in excess of reasonable compensation, proportionate to the injury sus-

tained, as to appear to be manifestly wrong that it can not upon any reasonable hypothesis be attributed to the calm and dispassionate judgment of the jury on the evidence as to the extent of the injuries, but must be attributed to sympathy, prejudice or other improper motive, it was the duty of the trial court to set aside the verdict and grant a new trial, and on refusing to do so, it is the duty of this court to reverse the judgment on that ground. Railway v. Gordon, 70 Texas, 81; Railway v. Bodie, 74 S. W., 104; Railway v. Burton, 30 S. W., 491; Railway v. Syfan, 43 S. W., 551; Railway v. Connell, 27 Texas Civ. App., 533; Railway v. Bernard, 57 S. W., 686; Railway v. Hartnett, 75 S. W., 809; Gibney v. Transit Co., 103 S. W., 43.

*O. T. Holt* and *Lovejoy & Parker,* for defendant in error.—On discretion allowed jury in assessing damages: Brooke v. Clark, 57 Texas, 113; Railway v. Randall, 50 Texas, 261, 262; Railway v. Stewart, 57 Texas, 170-171; Railway v. Brett, 61 Texas, 488; Railway v. Dorsey, 66 Texas, 153-154; Railway v. Lane, 79 Texas, 643.

On amounts held not to be excessive: Railway v. Shelton, 30 Texas Civ. App., 72; loss two legs, verdict $35,000; Railway v. Kelly, 34 Texas Civ. App., 21; legs paralyzed, verdict $30,000; Waters-Pierce Oil Co. v. Snell, 47 Texas Civ. App., 413; burned all over body and face, verdict $30,000; Railway v. Nesbit, 43 Texas Civ. App., 631; portion of both feet off, verdict $21,950; Railway v. Coote, 57 S. W., 917; injuries to his back and spinal cord, thereby making him bedridden, verdict $20,000.

REESE, Associate Justice.—This is a suit by appellee against appellant to recover damages for personal injuries alleged to have been received by him as the result of a collision between an engine on which plaintiff was riding and on which he was employed as fireman, and another engine on defendant's railway line. It was alleged by plaintiff that the accident which was the occasion of his injuries was caused by the engine on which he was fireman and on which he was riding leaving the main track and colliding with an engine attached to a freight train standing on a side-track, and that the switch leading from the main track to the siding had been left open through the negligence of defendant's agents and servants. Defendant pleaded general denial and assumed risk. Upon a trial with a jury there was a verdict for plaintiff for $25,000, and from the judgment this appeal is prosecuted.

The facts with regard to the accident, as disclosed by the evidence, are as follows: Appellee was in the employ of appellant as a fireman on a passenger engine, with its train of ten cars, left Houston, northbound, at 9:20 o'clock p. m., on December 18, 1906. The train, which had been running at a speed of about sixty miles an hour, when approaching the station at Thornton slowed down to about thirty miles an hour, and was running at about this speed, approaching the station. When the engine got within about fifty yards of a switch just south and a short distance from the station, the engineer discovered that the switch was open. An engine attached to a southbound freight train was standing on the side-track into which the

switch led, and about seventy-five feet from the switch. The passenger engine plunged through the open switch into the freight engine. Appellee, who had just previously been engaged in testing the water in the boiler of his engine, had just gotten back into his seat on the left side of the cab when the engineer exclaimed that the switch was open. He tried to get through the window in front of the cab, intending to get out on the running-board alongside of the boiler and jump from there to the ground, but his clothing caught, and when the collision occurred he was thrown back into the cab and caught in some way and his leg broken, and from there he was thrown to the ground, where he lay until someone came to his relief and carried him to a place of safety. An oil tank car was next to the freight engine and in some way the oil escaped therefrom and covered the ground. This oil caught fire and appellee suffered some injuries by being burned before he was removed. Both of the bones of his leg were broken between the knee and the ankle. The passenger train was due to arrive at Thornton at 2:30 a. m., but was about thirteen minutes late. The evidence justifies the conclusion that the freight train southbound arrived at Thornton, finished the switching, and went in on the siding a few minutes earlier. One Maddox was the head brakeman of the freight train, and in the discharge of his duties as such he opened the switch to let the freight engine in on the siding. It was his duty to then close the switch, "lining it up" for the main line for the passage of the northbound passenger train then due. He testified that he closed the switch and locked it securely after the freight engine passed into the siding, and then went up to the station, lay down and went to sleep; that when the passenger train approached the conductor sent him down to the freight engineer, who with his fireman had remained on his engine, with orders, and that as he was standing by the freight engine the passenger train came in and the engine crashed into the freight engine. Whether Maddox closed the switch and it was afterwards opened by some unauthorized person before the arrival of the passenger train, or failed to close it, was the issue upon which the case turned. It was further charged, however, by plaintiff that if Maddox closed the switch, appellant, its agents and employes were guilty of negligence in failing to see that it was kept closed until after the passage of the passenger train.

The headlight of the freight engine, as was customary in such cases, after it passed into the siding was covered so that it gave no light in the direction of the passenger engine. When the engineer of the passenger train discovered that the switch was open he did everything possible to prevent the disaster, but it was impossible to materially check the speed of the train in the short distance intervening. He could not have discovered the open switch in time to avoid the disaster. When the freight engine went in on the siding it stopped at a distance of certainly not more than seventy-five feet (appellee testified about thirty feet) from the switch, and both the engineer and his fireman remained on the freight engine up to the moment of collision. The switch was unquestionably open when the passenger train struck it. There was some evidence that when examined after the accident the switch-lock was gone, and some evidence that after

the accident Maddox went to the switch stand and was heard trying to throw it back or "fooling with it," which was denied by him. It would have required considerable force and violence to break the lock, and it could not have been done without being heard by the engineer and fireman on the freight engine. The evidence fully authorized a finding that Maddox was mistaken about having closed the switch after the freight train went into the siding. The injuries received by appellee were permanent and serious.

The court submitted to the jury the issues of negligence of appellant in leaving the switch open and also in failing to use proper care to keep it closed, and the issue of assumed risk on the part of appellee. By its first assignment of error appellant assails the following charge given by the court: "Guided by these instructions, if you believe from a preponderance of the evidence that the said switch being open and said train being so deflected was the result of the negligence of defendant's servants and employes in not properly closing the switch, or in not keeping the same closed; and further believe that plaintiff's injuries, if any, were the direct result of the negligence, if any, of defendant's servants and employes in regard to said switch, and that he did not assume the risks, then you will find for the plaintiff, and assess his damages as hereinbefore instructed."

The first objection to this charge is that it assumes that appellant's servants and employes were guilty of negligence "in not properly closing the switch." We think this is not a fair criticism of the charge. Standing alone, the jury could not have so understood it. If there were any doubt, however, on this point it is relieved by reference to paragraph four of the charge immediately preceding, whereby the jury was instructed that the burden of proof was upon appellee to prove by a preponderance of the evidence that he was injured as the direct result of the "negligence" of appellant, and to paragraph six, immediately following the paragraph containing the charge objected to, that if the jury believed that the switch being open was not the result of the negligence of appellant's servants or employes, to find for appellant. The jury was carefully told to construe all parts of the charge together. It must have been understood by the jury that negligence *vel non* in the matter of the open switch was a matter to be determined by them. One part of the charge may be looked to for the purpose of qualifying another. (Baker v. Ashe, 80 Texas, 361; Galveston, H. & S. A. Ry. v. Matula, 79 Texas, 581.)

There is no merit in the second objection to this charge that it submitted to the jury the issue of negligence of appellant's employes in not "properly" closing the switch. In support of this objection it is urged that there was no allegation in the petition that the switch was not "properly" closed; only that it was not "closed." The evidence did not present any ground for a distinction between "closing" and "properly closing" the switch. If it was not "properly closed" it was not closed.

The third proposition under this assignment presents the same objection with the added qualification that there was no evidence that the switch was not "properly closed." The proposition that it is error to charge upon an issue not presented by the pleadings or upon which

there is no evidence, is sound, but it has no application here. The substance of the issue as stated by the charge was presented by both the pleadings and evidence.

The fourth objection to the charge is that it assumes the negligence of defendant's employes in not keeping the switch closed, whereas there was no evidence tending to show that there was any duty imposed on said employes to see that the switch was kept closed after it was once closed and locked. Certainly, this was not assumed by the charge, but the issue was submitted. We are not prepared to say that, in the circumstances of this case, the duty did not rest upon the employes of appellant to use ordinary care to see that the switch was kept closed until the passing of the passenger train for the protection of the freight train as well as the passenger train. The freight engine was just inside of the switch not more than seventy-five feet away, according to Maddox's testimony, thirty feet according to that of appellee. The passenger train was due then and must have been expected to arrive every moment. The brakeman of the freight train was on the ground. He testified that when he came down to give the engineer his orders, as he stood by the engine, if he had thought of it, by glancing at the switch target in a few feet of him, he could have seen that the switch was open. An open switch in such circumstances was fraught with such frightful danger of the destruction of life and property, that it is not too much to say that whatever may have been the duty of employes of the appellant as to safeguarding switches scattered along the line, they should have used some degree of care to see that this one remained closed until the passenger train passed; and if the accident was due to want of ordinary care in this regard, appellant would be liable. But if we are mistaken in this, the evidence is so preponderating that Maddox is simply mistaken about having closed the switch, and that it was not afterwards violently and forcibly thrown open or in any way opened by any unauthorized person, that the conclusion can not be escaped that the verdict of the jury was based upon this theory and could not have been influenced by the charge referred to. That the switch was open is practically admitted. At least it is established beyond question by the undisputed testimony. If Maddox closed it, then some miscreant in a spirit of pure and wanton deviltry in the short time elapsing from the closing of the switch by Maddox to the arrival of the passenger train, went to the switch, broke the lock, or in some way opened it, and threw the switch, and this in a hundred yards of the station, and in from thirty to seventy-five feet from where the engineer and fireman of the freight train sat in the cab of the engine. The thing is improbable to the verge of incredibility. Such a thing might have been done in some lonely out-of-the-way place, but at that time and that place and all without attracting the attention of the engineer and fireman of the freight train, is so extremely improbable of occurrence that it is inconceivable that the jury so found, when all of the evidence points to the conclusion plainly and clearly, in spite of Maddox's testimony, that while he may have intended to close the switch and may have thought he did so, he is mistaken. He testifies in one place that his "recollection is that he

lined up the switch for the main line." It might possibly have been unlocked by someone having a key and changed without noise, but even this, with the engineer and fireman so near, is barely possible. Clearly, the lock was not broken. Some evidence was offered that it had disappeared and had never been found, but, on the other hand, the testimony showed that it would have been practically impossible to have broken the lock and thrown the switch without attracting the notice of the engineer and fireman on the freight engine. Maddox would naturally shrink from admitting even to himself that he had left the switch open, and doubtless has deceived himself into believing that he closed it. Taking all the evidence into consideration, we conclude that it is not conceivable that the jury should have been influenced by the charge referred to, in basing their verdict upon the theory presented. As said by this court in St. Louis S. W. Ry. Co. v. Groves, 44 Texas Civ. App., 63: "Again, however, the question is whether the jury were misled, for in the absence of some feature of the charge apparently indicating a contrary opinion on the part of the trial judge, all the probabilities are that the jury found according to the undisputed proof. It is a common thing for Appellate Courts to look to the state of the proof in determining whether some slight error either of law or procedure is harmless. The fact that the evidence strongly preponderates in favor of the verdict is of weight in such an inquiry."

The fifth proposition under the first assignment presents substantially the same objection, and is, we think, equally without merit. The objection presented in the sixth proposition is not sound. The first assignment of error, the various propositions under which we have discussed, presents no ground for reversal and is overruled.

The second assignment of error presents the objection to the paragraph of the charge upon the defenses urged by appellant, that it shifted the burden of proof and placed it on defendant to show that the switch being open was not due to its negligence. We do not think, in view of the entire charge, which must be looked to, that the paragraph referred to could have been so understood by the jury. The charge is as follows: "On the other hand, if you believe the brakeman Maddox properly closed the switch, and that it was afterwards and before the arrival of the passenger train tampered with and opened by some unauthorized person, whether an employe of the company or not, if his duties were in no way connected with the throwing of said switch, and that it was so tampered with and opened at such time and in such manner that such action could not have been prevented by the use of ordinary care on the part of the agents and servants of defendant, or believe that such tampering with and opening could not by the exercise of ordinary care have been discovered by the agents and servants of defendant in time to have closed the switch before the passenger train arrived, or if you believe said switch being open at the time of the accident was not the result of negligence on the part of defendant's servants or employes, then in either event named in this paragraph you will find for defendant."

The difference between believing that a thing did not occur and not believing that it did occur, while it is a real distinction having

reference to a state of mental equilibrium between the two states of mind of belief or unbelief, can not be supposed to have been in the minds of the jury or affected their proper determination of the issue of negligence, especially in view of another portion of the court's charge directly instructing them that the burden of proof was upon plaintiff to prove by a preponderance of the evidence that appellee's injury was the direct result of the negligence of defendant. A further answer to this assignment is that the charge referred to, at all events, does not present affirmative error. The assignment is without merit.

The third assignment does not require discussion and is overruled.

While the plaintiff was testifying, seeing that he stopped and apparently thought or studied before answering questions put to him, his counsel asked him why he did this, to which he replied that he did not know any reason except that his mind was not as accurate as it was before he was hurt. The question and reply thereto were objected to by appellant on the ground that it was for the jury to determine from witness's appearance and manner his credibility and the weight of his testimony, and that this explanation was self-serving. The objection was overruled and appellant excepted. The correctness of this ruling is assailed by the fourth assignment of error. If the answer conveyed the impression that appellee's mental processes had been affected by his injury, it was proper for him to so state. It was a legitimate subject of inquiry as affecting the question of damages. It was not properly objectionable that the information should have been elicited, as it was, in explanation of his hesitation in answering questions. The witness's reply was in substance that his mind and memory did not compare with what they were before his injury, which was the reason he did not reply more promptly to questions put to him. There was no error in the ruling complained of.

There was no error in the matter of the admission in evidence of the photographs of the bones of appellee's injured leg taken with an X-Ray instrument, in connection with the testimony of Dr. Boyd, as to the character and use of the instrument and the manner in which the photographs were taken. The burden of appellant's objection seems to be that without cutting away the intervening flesh, skin, etc., it was impossible to tell whether these pictures correctly represented the condition of the injured bones. It would be strange if in the trial of cases in courts use could not be made of facts elicited by means of a process, the usefulness and absolute accuracy of which has been so completely demonstrated as have been photographic views of the bones of a living body by means of the X-Ray. When properly taken, as these views were shown to have been, it is a matter of such common knowledge that they accurately represent what they purport to show that even courts may take cognizance of the fact. There was no error in the admission of the photographic views, and the testimony of the expert medical witnesses in connection therewith. It was shown that the instrument used was a correct instrument of the kind, and had been frequently used by the witness. The fifth, sixth and seventh assignments of error presenting appellant's objections to the introduction of the pictures and the testimony of physicians based

thereon, as to the condition of the injured bones, are overruled. (16 Cyc., 856; Luke v. Calhoun Co., 52 Ala., 115.)

The eighth assignment of error is as follows: "The court erred in making certain remarks while the witness Ed. Maddox was upon the stand testifying, which testimony and remarks of the court were as follows: The witness testified: 'In my experience and within my knowledge switches are thrown improperly, and nobody can explain how they get that way. Very often switches are meddled with by outsiders and thrown without the action of the train crew; that is done very often.' Whereupon defendant's counsel asked him the following questions: 'Did you know of any way that it could be avoided? that you could keep people from throwing switches that way?' To which plaintiff's counsel objected as follows: 'There is no evidence here that people throw any switches except the people who have charge of the road; that is the only evidence so far.' Whereupon the court remarked: 'That is hardly a question of expert knowledge.' Defendant's counsel then asked this witness if he frequently found them that way and if he knew of any method, in view of his experience, by which railroad companies could avoid such conditions; to which the witness answered: 'No, sir, I do not.' Whereupon plaintiff's counsel said: 'I don't object to it; I don't think it is a proper question, but I shall not object to it.' Whereupon the court remarked: 'I don't think the question is proper.' To which remark of the court defendant's counsel excepted, whereupon the court stated that he meant to say that the evidence was inadmissible. The remarks of the court were clearly upon the weight of the evidence, and were upon a vital issue raised by the defendant in its behalf, and tended to destroy said evidence and seriously prejudiced the rights of the defendant in this case."

We think that there is a marked distinction on this point between this case and Thomson v. Kelley, 97 S. W., 326, decided by this court. Evidence in the latter case was admitted as to certain calls in a survey denominated "passing calls," upon the issue as to the true location of the lines of the survey. The trial judge in admitting this evidence remarked and repeated the statement in the presence and hearing of the jury, that these calls were of little or no force in locating the corners. This court held that this was a direct comment upon the weight of the evidence which was clearly admissible and as objectionable as if the jury had been instructed by the court as to the weight to be given these "passing calls" in the determination of the issue presented. In its probable effect on the jury we think there is a great difference between such a statement from the court and the remark made in this case that the evidence was not proper or was not admissible. Such statement bore only upon the admissibility of the evidence which was admitted without objection. It was not proper, however, for the court to make even this statement. When counsel stated that he made no objection to the testimony the court was not called upon to make any statement whatever upon its propriety or admissibility, and should not have done so. In view, however, of the state of the evidence upon the issue as to whether Maddox failed to close the switch, or the same was, after having been

closed, tampered with by some malicious or meddlesome person which we have heretofore discussed, we can not think that the improper remark of the court should have had any effect upon the jury prejudicial to appellant. If the testimony was not admissible, upon which point, as it was admitted without objection, we are not called upon to express an opinion, that fact did not deprive it of such probative force as the jury may have seen fit to give it. Missouri, K. & T. Ry. v. Johnson, 92 Texas, 382, cited by appellee to support the contention, in answer to the assignment, that testimony not legally admissible can have no probative force, does not so hold. This court held to the contrary in Gray v. Fussell, 48 Texas Civ. App., 261. Our conclusion is, however, that the action of the court does not present reversible error.

The appellant requested three separate special instructions presenting the issue as to whether Maddox left the switch open or it was, after having been closed by him, tampered with by some other person. These charges are substantially the same and were all refused, and the refusal is complained of in the ninth, tenth and eleventh assignments of error. We are mindful of the rule announced in the Rogers (91 Texas, 58), McGlamory (89 Texas, 638), and Washington (94 Texas, 510), cases, the entire correctness of which is not questioned and the effect of which we are not inclined in any way to minimize, but we are of the opinion that the rights of appellant in the presentation of its defenses were sufficiently guarded in the court's charge, which, we think in this particular, fully complied with the rule announced in the cases cited. In substance and effect the charge of the court was identical with the requested charges. In such case it was not error to refuse the special charges requested, and the assignments referred to are overruled. The charge of the court in this particular has been heretofore copied. One of the refused charges, and they are all the same in substance, is as follows: "You are instructed that if you believe from the evidence that the switch which connected the main with the sidetrack on which the collision occurred, was properly closed by the switchman Maddox before the arrival of the passenger train, and that afterwards, and before the arrival of said passenger train, it was tampered with and opened by some unauthorized person (whether an employe of the company or not, if his duties were in no way connected with the throwing of said switch), and that it was so tampered with and opened at such time and in such manner that such accident could not have been prevented by the defendant, its agents or servants by the use of ordinary care, or at such time that such tampering with and opening could not by the use of ordinary care have been discovered by the agents of defendant in time to have closed the switch before the passenger train arrived, then you will find for defendant."

The twelfth assignment of error complains of the verdict as excessive to such an extent as to indicate that it was not the result of a fair consideration of the evidence, but of "prejudice or passion or some other improper motive." The jury allowed appellee $25,000. The evidence showed that both bones of the leg were broken between the knee and the ankle; that one of the broken bones has never prop-

erly united and in consequence the foot is turned in, interfering with his walking, and that he will never have proper use of that leg, although in time he will acquire some substantial use of it. While he lay in the hospital about a dozen small pieces of the bone of his leg were taken out. The broken bone protruded through the flesh and clothes and stuck in the ground when appellee fell out of the cab. According to his testimony the flames from the burning oil reached him and set his clothing on fire, and his legs and feet and some parts of his body were severely burned. He endured very great physical suffering for several months from the burns and from the wounds on his broken leg, which required some time to heal. Appellee at the time of the trial was twenty-seven years old. His earnings the month previous to the accident were about $125. The average for five years before had been $65 a month. Giving full faith to the evidence upon this issue, including appellee's testimony as to the amount of his physical suffering, we can not agree that the verdict should stand. The amount is so unreasonably large in view of all the evidence as to indicate that it was not the result of a fair consideration of the evidence. Upon this ground the trial court should have granted appellant's motion to set aside the verdict and grant a new trial. A remittitur of $7,500, reducing the amount to $17,500, will still allow appellee, in our judgment, liberal compensation for his injuries. If appellee will file in this court within twenty days from March 18, 1909, a remittitur of $7,500, the judgment will be reformed and affirmed for $17,500, otherwise, for the reasons given, it will be reversed and the cause remanded.

*Affirmed on remittitur.*

Writ of error refused.