## UNITED EMPLOYERS' CASUALTY CO. v. BURK.

### No. 11044.

Court of Civil Appeals of Texas. Galveston.

May 9, 1940.

Rehearing Denied May 30, 1940.

Will R. Saunders, of Dallas (Henry D. Akin, of Dallas, of counsel), for plaintiff in error.

Jones & Jones and C. A. Brian, all of Marshall, for defendant in error.

MONTEITH, Chief Justice.

In this opinion plaintiff in error will be designated as appellant and defendant in error as appellee.

This is an appeal in a compensation suit brought in the district court of Marion County by appellee, Claud Burk, as plaintiff, against appellant, United Employers Casualty Company, to set aside an award of the Industrial Accident Board and to recover compensation for total and permanent incapacity alleged to have been the result of an injury sustained by him on or about September 25, 1938, in the course of his employment as a driller's helper with Red Iron Drilling Company, who carried compensation insurance with appellant.

Appellant answered by general demurrer, exceptions, and a general denial.

The jury found, in answer to special issues submitted, that the injuries received by appellee on the occasion in question resulted in total incapacity; that the total incapacity is permanent; that such total incapacity is not temporary; that said injuries did not and will not result in partial incapacity; that a manifest hardship and injustice will result to appellee if the compensation insurance due him by appellant is not paid in a lump·sum; and that the work being performed by the drilling crew on which plaintiff was working when he was injured was one of necessity.

Based on the answers to said special issues, judgment was rendered in favor of appellee, setting aside the award of the Industrial Accident Board and awarding appellee recovery for total and permanent disability for a period of 387 weeks at the rate of $20 per week, payable in a lump sum.

Appellant contends that special issue No. 1 of the court's charge was submitted too generally; that it was not confined to the injuries pleaded and proven, and that the jury was permitted to speculate upon injuries out of the record, and was not confined to a consideration of the injuries supported by the pleadings and evidence.

Special issue No. 1, complained of, reads: "Do you find from a preponderance of the evidence, if any, that the injuries received by Claud Burk on or about September 25, 1938, while employed by Red Iron Drilling Company as a back-up man or driller's helper, resulted in total incapacity?"

Appellee pled in connection with the injuries alleged to have been received by him that " * * * plaintiff was hit by the loose end or the end of a heavy piece of rope or other piece of material or object, across the neck and side of the head and other portions of the body, and that as a result thereof he sustained the grievous, severe and permanent general injuries hereinafter more extensively referred to * * *; that he was struck by said heavy piece of rope as above alleged, he was rendered unconscious or semi-unconscious or dazed and stayed in these states or some of them for quite some time. Plaintiff was rendered sick by said blow. That thereafter and continuously since that time, plaintiff has been troubled constantly by headaches and dizziness, increased intracranial pressure * * ·*."

There was no eye witness to the actual blow, if any, which caused appellee's injuries. He testified that he was working on the derrick floor, engaged in what is known as "running a spinning rope and using the tongs", which consisted in holding and allowing to run through his hands a rope an inch and a half or an inch and three-quarters in diameter which was wound around a revolving shaft attached to and run by a motor; that the last thing he remembered was holding this rope and that when he awakened he was in a hospital.

Fred Meyer, who was working with appellee, testified that he did not see anything actually strike appellee but that he looked around and saw him lying on his back and that he saw a welt back of his neck running across his right jaw.

X-ray pictures of appellee's head showed a linear fracture that extended from the groove of the lateral sinus straight downward two and a half inches in length.

From above record, it is obvious that appellee received only one injury on the date inquired about in special issue No. 1, and that the matters complained of by appellant as separate injuries were pled by appellee and established by the record to be the results of and symptoms of the injury referred to therein.

■ Since the question to be determined by said special issue No. 1 was the extent of the injury received by appellee at the time and under the circumstances inquired about therein, we think that there was no error in assuming that there was some injury, in the submission of said issue, or in inquiring as to the extent of the disability resulting therefrom, particularly since no issue was requested by appellant as to whether appellee did sustain an injury on or about September 25, 1938, while employed by Red Iron Drilling Company. Security Union Ins. Co. v. Hall, Tex.Civ. App., 37 S.W.2d 811; Lloyd's Casualty Ins. Co. of New York v. Grilliett, Tex.Civ.App., 64 S.W.2d 1005; Texas & P. Ry. Co. v. Dickey, Tex.Civ.App., 70 S.W.2d 614.

In its third proposition appellant contends that the court erred in submitting special issue No. 4, inquiring as to how many weeks appellee's total incapacity has continued or will continue after September 25, 1938, conditioned on a negative answer to special issue No. 2, inquiring as to whether such total incapacity will be permanent, on the ground that it was entitled to an unconditional submission of its alleged affirmative defense, that appellee's total incapacity was not permanent.

Special issues Nos. 2, 3 and 4 of the court's charge read:

"Special Issue No. 2. Do you find from a preponderance of the evidence, if any, that the total incapacity, if any you have found, in answer to Special Issue No. 1, is permanent? Answer 'Yes' or 'No'." Answer: "Yes."

"Special Issue No. 3. Do you find from a preponderance of the evidence, if any, that such total incapacity, if any you have found, in answer to Special Issue No. 1, is not temporary? In the event your finding on this issue is in the affirmative, let your answer be, 'It is not temporary';

otherwise, let your answer be 'no'." Answer: "Not temporary."

"If you have answered Special Issue No. 2 'No', then answer the following question:

"Special Issue No. 4. How many weeks, if any, do you find from a preponderance of the evidence, if any, that such total incapacity, if any, you have found in answer to Special Issue No. 1, has continued or will continue from and after September 25, 1938?" Answer: "———."

■■ While it is now the settled law in this state that an insurance carrier is entitled to an unconditional submission of an issue as to whether or not the claimant's incapacity is temporary where there is evidence to justify it, Texas Fire & Cas. Underwriters v. Watson, Tex.Civ.App., 126 S.W.2d 496; Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, we think that the appellant's right to the unconditional submission of the issue as to whether appellee's total incapacity was not temporary but permanent was preserved to it by the submission of special issue No. 3, inquiring as to whether such total incapacity was "not temporary".

This rule is sustained in the recent case of Traders & General Ins. Co. v. Herndon, Tex.Civ.App., 95 S.W.2d 540, and Service Mutual Ins. Co. of Texas v. White et al., Tex.Civ.App., 138 S.W.2d 273, in which it is held that the error in refusing an issue in a compensation suit as to whether an employee's total incapacity was temporary, was cured by the unconditional submission of another issue inquiring as to how long the employee's total incapacity, if any, continued or would continue.

■ Appellant complains of the submission of special issue No. 5 of the court's charge, inquiring as to whether the injuries received by appellant resulted, or will result, in partial incapacity, on the ground that said issue erroneously placed the burden of proof upon the appellant to prove the affirmative thereof.

Special issue No. 5 reads: "Do you find from a preponderance of the evidence, if any, that the injuries received by Claud Burk, on or about September 25, 1938, resulted or will result in partial incapacity? Answer 'Yes' or 'No'." Answer: "No."

The exact question involved in this proposition has been decided by the Supreme Court contrary to appellant's con-

**574**

tention in the case of Wright v. Traders & General Ins. Co., 132 Tex. 172, 123 S.W.2d 314, 316, Tex.Com.App., opinion adopted. This was an action brought to set aside a compensation award in favor of an insurance carrier. The court submitted the issue of partial incapacity affirmatively. The court in its opinion says: "The foregoing statement within itself constitutes an all sufficient reason against its negative submission, unless, of course, it is necessary to so submit it in order to prevent a denial of right to either plaintiff or defendant. The issue affirmatively phrased correctly submits plaintiff's alternative basis of recovery and at the same time accords defendant an affirmative submission of its ground of defense. The burden of proof is not misplaced by an affirmative statement of the issue, as the defendant has the burden of establishing by a preponderance of the evidence its defense of partial incapacity. Nor has defendant any just ground of complaint to its submission affirmatively. It is no more onerous for defendant to establish the fact of partial incapacity by an inquiry stated affirmatively than it would be to establish the same fact by an inquiry phrased negatively. The mere fact that it is more likely that a mistrial due to conflicting findings will result from its negative submission constitutes no just reason therefor. If the probability of such a result is the sole reason for negative submission, it is not predicated upon a right, and if the court fails or refuses to submit the issue in such form the litigant desiring that it be so submitted suffers no denial of right. No reason is apparent why the finding of the jury upon the issue affirmatively submitted cannot justly serve the diverse purposes of plaintiff and defendant."

In its fifth proposition appellant contends that the trial court erred in submitting to the jury the instruction, "that you will make your verdict by consideration of the evidence introduced before you under the ruling of the court", on the ground that when considered in connectoin with other instructions it was conflicting and confusing on the burden of proof.

The court in his charge also gave the following instructions: "By the term 'preponderance of the evidence', as used in this charge, is meant the greater weight or degree of the credible testimony admitted under the rulings of the court." Following this definition the court began each issue with: "Do you find from a preponderance of the evidence * * *", or similar language.

■ Taking above instructions into consideration, it is obvious that the court, in giving the instructions complained of, did not charge on the burden of proof, but instead instructed the jury as to what they could consider as evidence in arriving at their verdict. St. Louis, S. F. & T. Ry. Co. v. Allen, Tex.Civ.App., 296 S.W. 950; Standard v. Texas Pacific Coal & Oil Co., Tex.Civ.App., 47 S.W.2d 443.

In its sixth proposition appellant contends that the court erred in admitting certain X-ray pictures in evidence over its objection that there was no proof that they had been properly taken and developed, or that they correctly portrayed the portions of appellee's body purported to be shown.

The record shows that the six X-ray pictures in question were taken by Dr. S. H. Kahn, a graduate physician, who had read and interpreted X-ray pictures for a period of eighteen years. He testified that the pictures, which were taken from a lateral view, showed a suspicious line in the back of appellee's skull, but that two sets of antero-postero views, being 3 and 3-a and 4 and 4-a, to which appellant objected, showed a fracture in the back part of appellee's skull.

Dr. C. C. Nash, who qualified as a specialist in surgical diseases of the nervous system, identified the X-ray pictures in question. He stated that he was qualified to interpret X-ray pictures of the head; that he was in the room when the pictures were made and when they were developed. He testified that appellee was placed in the correct position when the pictures were made, and when he was asked if they were correctly taken, he answered that the "picture is the best evidence of that, they are good pictures."

■ It is uniformly held that X-ray photographs of parts of the body are properly admitted in evidence when it is shown that the witness personally took the photographs; that they were taken in accordance with recognized standards of taking such photographs; and that they had been continuously in the possession of the witness. Federal Underwriters Exchange v. Cost, 132 Tex. 299, 123 S.W.2d 332; Houston & T. C. Ry. Co. v. Shapard, 54 Tex.Civ.App. 596, 118 S.W. 596; Utilities Indemnity Ex-

change v. Burks et al., Tex.Civ.App., 7 S.W.2d 1112.

Appellant complains of the action of the court in overruling its motion for an instructed verdict, on the alleged ground that there is neither pleading nor proof of appellee's average weekly wage, nor of any proper basis for arriving at appellee's rate of compensation.

Appellee alleged that "Plaintiff shows that after the happening of the occurrence above described, defendant, United Employers Casualty Company, admitted its liability in the premises, and began the payment of Workmen's Compensation Insurance to plaintiff by paying him the sum of $20.00 per week, said payments continuing for fourteen consecutive weeks. * *

"Plaintiff shows that his compensation herein should be computed at the rate of $20.00 per week by admission of the defendant in issuing said checks or drafts above referred to, * * *".

It is uncontroverted that appellant paid to appellee compensation for fourteen weeks at the rate of $20 per week prior to the institution of this action.

No issue was submitted to the jury and no issue was requested pertaining to plaintiff's average weekly wage or his rate of compensation. It was stipulated by counsel that appellee worked 270 days during the year immediately preceding the time of his injury, at $7 per day.

There is no pleading by appellant that said payments were made by appellant as a result of misrepresentation or mistake.

The court made the following recitation in its judgment: "It is further ordered, adjudged and decreed that plaintiff, Claud Burk, do have and recover of and from defendant, United Employers' Casualty Company, the sum of $20.00 per week for a period of three hundred and eighty-seven (387) weeks, payable in a lump sum, discounted according to law."

It is stated in 45 Texas Jurisprudence, page 660, that: "Where the insurer has admitted the payment of the claimant's weekly compensation, and has voluntarily paid that sum for a period, no issue is present as to the average weekly wages, there being no claim that the payment was induced by mistake or fraud."

In discussing the question of agreements as to average weekly wages it is stated in Texas Workmen's Compensation Law by J. John Lawler, page 319, section 163, that "another very common form of admission is payment by the insurer of weekly payments to the claimant prior to the trial. It should be noted here, however, that although the payment of weekly compensation does constitute an admission, the payment of a lump sum, quite properly, does not constitute an admission as to the average weekly wage."

In the case of Fidelity & Casualty Company of New York v. Branton, Tex.Civ. App., 70 S.W.2d 780, 783, it is said: "The contentions that it was error not to submit issues for a finding as to what plaintiff's average weekly wages were * * * are without force. Plaintiff's weekly compensation was not in question. Defendant admitted it to be $20 per week, and voluntarily paid that sum for 24 weeks. That was for total incapacity."

The above holding is followed in the case of Traders & General Ins. Co. v. Slusser, Tex.Civ.App., 110 S.W.2d 598, 600, in which it is held: "Furthermore, the evidence shows that appellant paid appellee compensation after his injury at the rate of $20 per week, for 19 weeks, in the absence of a showing that it did so as a result of misrepresentation or mistake it would be estopped to deny that the $20 per week was based upon the proper wage rate." (Citing cases).

The latest expression by our courts on the question as to whether error was committed by a trial court in failing to submit to the jury an issue as to appellee's wage rate and the court's independent finding of an average weekly wage rate is found in the case of Industrial Indemnity Exchange v. Ratcliff et al., Tex.Civ.App., 138 S.W.2d 613, 619 (writ of error dismissed W.O.J., Correct Judgment), in which the court in its opinion says: "It is without dispute, in fact appellant plead that it had paid appellee fifteen weeks' compensation at the rate of $9.97 per week. So it appears that appellant had recognized appellee's right to recover at that rate, and had actually paid him for fifteen weeks' compensation at that rate. Undisputed facts do not have to be submitted to the jury for a finding. The fact that appellee's wage was undisputed authorized the court to find in accordance with such undisputed fact. Commercial Standard Ins. Co. v. DeHart, Tex.Civ.App., 47 S.W.2d 898; Texas Emp. Ins. Ass'n v. Hamor, Tex.

Civ.App., 97 S.W.2d 1041; Traders & General Ins. Co. v. Slusser, Tex.Civ.App., 110 S.W.2d 598; Southern Surety Co. v. Eppler, Tex.Civ.App., 26 S.W.2d 697, writ refused."

Under above authorities appellant is in no position to complain of the findings of the court fixing appellee's compensation at $20 per week.

Finding no reversible error in the record, the judgment of the trial court is in all things affirmed.

Affirmed.