Delivered February 10, 1891.

---

Galveston, Harrisburg & San Antonio Railway Company v. Wenzel Matula.

No. 3036.

1. **Amending Officer's Certificate to Depositions.** — A defective certificate to a deposition may be corrected by the officer who took the deposition, in the presence of and under the direction of the court; and it may be that under the court's direction the officer might make such a correction elsewhere than in the presence of the court, but if so it ought to be done under such circumstances as would preclude all collusion or substitution of one set of answers for another.

2. **Same—Fact Case.**—Depositions were returned with defective certificate by the officer taking them. Motion to suppress for the defect was met by motion to amend the certificate. The amendment was allowed by the officer forwarding a perfect certificate to the attorney of the party desiring to use the deposition. This was attached to the answers, and the motion to suppress overruled. *Held,* error to permit the amendment in the manner done.

3. **Exclusion of Cumulative Testimony.**—There must exist in every court the power to determine when evidence purely cumulative shall cease, or there would be no limit to trials, and the exercise of such a discretion would be no ground for reversal of a judgment unless it was made to appear that this had been abused.

4. **Cumulative Testimony — Practice.** — In a case in which a fact to be established is not sworn to directly by witnesses, but must be established by proof of other facts from which the main fact is to be inferred, then evidence of different facts from which the inference may be drawn is not strictly cumulative. The exclusion of such testimony because cumulative was error where the fact was in dispute to which the testimony was directed.

5. **Charge—Paragraphs Read Together.**—The charge in separate paragraphs instructed the jury, first that plaintiff should recover if the injuries suffered by him were caused by the negligence of the defendant, and in the next proper care on part of the plaintiff was defined. *Held,* that the jury must be supposed to have considered the second paragraph as well as the first.

6. **Care on Part of Injured Party.**—It is no ground of complaint by the defendant railway company in suit for damages caused by its negligence to charge the jury that the plaintiff could not recover if he failed "to use that proper care and prudence that ordinarily prudent people exercise in the ordinary affairs of life." This was favorable to defendant.

7. **Jury the Judges of the Evidence—Depositions.**—The jury are the judges of the weight to be given to testimony and of the credibility of the witnesses, whether the testimony is by deposition or oral testimony.

8. **Sufficiency of Proof—Charge.**—In civil cases it is the duty of the jury to find in accordance with the preponderance in the evidence; the proof need not be to their satisfaction.

9.   **Care by Railway Company to Prevent Injuries.** — The degree of care incumbent on any person or corporation must be determined by the nature of the employment, the agencies used, the place where it is carried on, and the danger to others likely to result from its conduct.   It is not error to instruct the jury that it is the duty of a railway company to use great care and prudence in operating their trains in streets and at public places.   See facts.

10.   **Care at Crossings by Public Road.** — Crossings of public roads upon railway tracks not placed and kept in such condition that persons with vehicles or otherwise may cross them without delay, danger, or injury are not kept in condition in which their usefulness as crossings is not impaired.

11.   **Duty of Employes of Railway Company to Stop Train to Avoid Injury.** — See charge approved in defining the duty of the employes running a train to keep an outlook at crossings, and to stop the train when necessary for safety of persons upon or approaching the track upon a public crossing.

12.   **Damages for Causing Death of Wife.**—The damages recoverable by a husband against a railway company for negligently causing the death of his wife are the injuries resulting to the plaintiff from her death and none other.   See erroneous charge on subject.

13.   **Case Adhered to.**—Railway v. Kutac, 76 Texas, 478, adhered to as to care by one crossing the track of a railway company.

APPEAL from Colorado.   Tried below before Hon. George McCormick. The opinion contains a statement.

*Brown, Lane & Jackson,* for appellant, cited Creager v. Douglas, 77 Texas, 486; Laird v. Ivens, 45 Texas, 621; Rogers v. Crain, 30 Texas, 291; Todd v. Dysart, 23 Texas, 597; Cooper v. State, 23 Texas, 331; Thorn v. Frazier, 60 Texas, 259; City of Austin v. Ritz, 72 Texas, 399; Railway v. Beatty, 73 Texas, 596; Rev. Stats., arts. 4232, 4170, 2909; Railway v. Ryon, 70 Texas, 56; Railway v. Kutac, 76 Texas, 478; Medlin v. Wilkins, 60 Texas, 415; Lee v. Yandel, 69 Texas, 34.

Appellant is not liable to appellee for damage claimed by him, because the proof shows no negligence upon the part of defendant, but on the contrary shows that the accident resulted solely from the gross negligence and recklessness of the plaintiff himself, for by looking he could have seen the approaching train and could have avoided it.   Railway v. Kutac, 72 Texas, 643; Railway v. Smith, 52 Texas, 178; Railway v. Bracken, 59 Texas, 71; Railway v. Graves, 59 Texas, 330; Railway v. Chapman, 57 Texas, 75; Railway v. Richards, 59 Texas, 373; Hoover v. Railway, 61 Texas, 503; Thomp. on Neg., pp. 433, 439, 444; 2 Rorer on Rys., pp. 1055, 1061, 1062, 1067; Pierce on Rys., p. 343.

*Adkins & Green,* for appellee.— 1.   The correction of the officer's certificate was legal.   Creager v. Douglas, 77 Texas, 484; Chapman v. Allen, 15 Texas, 278; Rev. Stats., art. 1192; Rules for Dist. Ct., 12, 13.

2.   The trial judge in his discretion could control the accumulation of testimony.   Alsop v. Jordan, 69 Texas, 300; Douglas v. Mundine, 57 Texas, 344; Dailey v. Starr, 26 Texas, 562; Stansell v. Cleveland, 64 Texas, 660.

3.   The court's charge must be taken as a whole.   Rost v. Railway, 76 Texas, 168; Railway v. Stewart, 57 Texas, 166; Moore v. Moore, 73 Texas, 382.   A harmless error is no ground for reversal.   Bennett v. Harrington, 70 Texas, 213; Shumard v. Johnson, 66 Texas, 70.

4.   The court will not disturb the verdict of a jury where the evidence is conflicting.   The proof shows that the injury complained of resulted from the gross negligence of the appellant, its agents and employes in placing and leaving its road bed in such condition as to stall and detain appellee's wagon on the crossing till run down and hit by the locomotive, and by not attempting to avoid the collision or to reduce the injuries flowing therefrom by checking the velocity of the train.   Hardware Co. v. Kaufman & Runge, 77 Texas, 131; De Cordova v. Bahn, 74 Texas, 643; Wolf v. Brass, 72 Texas, 133; Railway v. Dawson, 62 Texas, 263; Jacobs, Bernheim & Co. v. Hawkins, 63 Texas, 1; Railway v. O'Donnell, 58 Texas, 27; Greenleve, Block & Co. v. Blum, 59 Texas, 124; McCartney v. Martin, 1 Posey's U. C., 143; Craig & Ogden v. Marx & Kempner, 65 Texas, 649.

5.   The injuries complained of resulted from the negligence of appellant without contribution on the part of appellee.   Artusy v. Railway, 73 Texas, 191; Railway v. Symkins, 54 Texas, 615; Railway v. Walker, 70 Texas, 132; Baughman v. Railway, 92 Pa. St., 335; Railway v. Lee, 70 Texas, 496; Railway v. Greenlee, 70 Texas, 553.

STAYTON, CHIEF JUSTICE.—This action was brought by appellee to recover damages for an injury resulting in the death of his wife, which occurred by collision between appellant's train and a wagon in which appellee and his wife were at a public crossing over the railway.

He sought also to recover damages for injury to himself, horses, and wagon, and recovered for the death of his wife and for injury to his horses and wagon.

Plaintiff had caused the deposition of a witness to be taken before a notary public in Fayette County and filed in the District Court of Colorado County, but it was not properly authenticated, in that the notary did not insert the name of the witness who had made and subscribed the answers, nor did he attach his official seal to the certificate.

Exceptions were filed to the depositions on these grounds in due time, and to cure these defects the notary made a proper certificate and sent it by mail to an attorney of plaintiff to be attached to the deposition, which the court below permitted to be done and overruled the objections to the deposition.

It has been held that a defective certificate to a deposition may be corrected by the officer who took the deposition, in the presence of and under the direction of the court; and it may be that under the court's direction the officer might make such a correction elsewhere than in the presence

of the court, but if so, it ought to be done under such circumstances as would preclude all collusion or substitution of one set of answers for another.

In this case the court had not the guaranty that the notary's certificate was at last attached to answers that ever were subscribed and sworn to before him.

He was not present, under the sanction of his official oath, to identify the answers to which the court directed his completed certificate to be attached, nor were they identified by the former incomplete certificate, which gave not the name of the witness and itself was wanting in that evidence of verity which the officer's seal would furnish.

A practice of this kind in amending officers' certificates to depositions might lead to much fraud and imposition; and though nothing of the kind may have occurred in this case, such a practice can not be recognized as lawful.

The depositions of two witnesses were offered, and upon inquiry by the court whether they were "about the same matters as those that have already been read," counsel for defendant replied that the questions were the same, as were many of the answers, but that some of the answers were different from those that had been read; whereupon the court replied "that the evidence being but cumulative he would not permit said depositions to be read," counsel for defendant insisting that some matters in them differed from the testimony of other witnesses; but the differences are not pointed out in the bill of exceptions, nor are they shown to have been pointed out to the court, nor does the brief of counsel here point out the differences.

The bill of exceptions closes as follows: "Approved with this qualification, that the court stated to the counsel he could not read any more depositions on the same subject of the five preceding witnesses had sworn to, as such evidence would be cumulative."

The evidence related to facts bearing on plaintiff's ability to have seen the approaching train from where he was long before it reached the crossing, and to some other matters about which there was some conflict of testimony.

There must exist in every court the power to determine when evidence purely cumulative shall cease, or there would be no limit to trials, and the exercise of such a discretion would be no ground for reversal of a judgment unless it was made to appear that this had been abused.

Such a power is one, however, to be exercised with the utmost care; and in a case in which there was but little or no controversy as to a given fact such evidence might properly be cut off at a point where it would be improper to do so when the evidence was greatly conflicting.

In a case in which a fact to be established is not sworn to directly by witnesses, but must be established by proof of other facts from which the

main fact is to be inferred, then evidence of different facts from which the inference may be drawn is not strictly cumulative.

From the bill of exceptions it may be inferred that the court below refused to hear further evidence tending to prove the controverted fact or "subject" because other evidence, although not to the same facts, had been introduced tending to prove the same issue.

If this was the ruling it was erroneous.

We do not see that the cross-interrogatory and answer read by the plaintiff from one of the depositions excluded by the court had any relevancy to the case, and think it should have been excluded.

In the first paragraph of the charge the court, in effect, instructed the jury that plaintiff would be entitled to recover if the injuries of which he complained were caused by the negligence of the defendant's servants, and the second paragraph was as follows:

"2.  But if you believe from the evidence that the injuries complained of by plaintiff were done or inflicted, and that plaintiff by the want of the use of that proper care and prudence that ordinarily careful and prudent people exercise in the ordinary affairs of life, contributed to his loss and injury, and that such would not have occurred if he had used such ordinary care and prudence, then plaintiff can not recover in this suit, and you will find for the defendant."

It is urged that the first paragraph was misleading in that it did not inform the jury that negligence on part of plaintiff would defeat his right to recover even if the servants of defendant were negligent; but the jury must be supposed to have considered the second paragraph as well as the first, and considered together they were not misleading.

It is further urged that the second paragraph was erroneous in that it informed the jury that plaintiff was only under obligation to use a low degree of care.   Such, however, was not the effect of the charge.

Its effect was to inform the jury that plaintiff could not recover if he failed "to use that proper care and prudence that ordinarily prudent people exercise *in the ordinary affairs of life.*"

This charge was favorable to the defendant.

The court instructed the jury that they were the exclusive judges of the weight to be given to testimony and of the credibility of the witnesses; and because the evidence was mostly by deposition it is urged that this was error.

Such is the province of a jury, it matters not whether the evidence be by deposition or otherwise.

When all the testimony in a case is by deposition appellate courts have the same means as have a jury to determine the weight that ought to be given to it, as have they of judging the credibility of witnesses, and on this account do not always give to the verdict of a jury the weight which would be, had the witnesses testified orally before them on the trial; but how-

ever the testimony may be brought before a jury, they are the judges of the weight to be given to it, as well as of the credibility of the witnesses.

Defendant requested the following charge, which was refused: "In order to entitle the plaintiff to recover a verdict in this case, he must prove to the jury by a preponderance of the evidence *and to their satisfaction* that the accident or collision of which he complains arose by and through and on account of the negligence of the defendant or its employes in manner as charged in his petition, and without any fault or want of care or caution on his part."

There was no error in this ruling; for in civil causes it is the duty of a jury to find in accordance with the preponderance of the evidence, and the proof need not be *" to their satisfaction."*

The charge was faulty in another respect, which will be noticed in another connection.

The court gave the following charge: " You are further instructed that the law requires those in charge of railway engines and trains to use great care and prudence in operating them so as to avoid damage and injury to the property and persons of other people; and if by the want of use of such care and prudence injury is inflicted upon others without the fault of such others, such companies must pay for such injuries and damage."

It is urged that this was error in that it exacted of defendant a higher degree of care than the law requires.

The degree of care incumbent on any person or corporation must be determined by the nature of the employment, the agencies used, the place where it is carried on, and the danger to others likely to result from its conduct; and it is not error to instruct a jury that it is the duty of a railway company to use great care and prudence in operating their trains in streets or at public crossings.

The accident in this case occurred at a public crossing where persons might be expected to be and where they had a right to be, and this charge was properly adapted to the case before the court.

The fourth charge requested by defendant and refused, in so far as correct, was embraced in the charge given in the third paragraph of the main charge.    That charge was as follows:

"3.    The law requires persons operating railway engines and trains to provide each locomotive engine with a bell and steam whistle, and that the whistle be blown or the bell rung at a distance of at least 80 rods (which is about 440 feet) from the place where the railway track crosses a public road or street, and that such bell shall be kept ringing until the engine shall cross the same, thus giving notice of their approach to said crossings; and the failure of railway companies to give such notice or to keep such crossings in repair, so that the track may be crossed without delay, damage, or injury would be negligence, if it is shown that injury is caused thereby, for which the company would be liable, provided the

person injured by such negligence did not contribute by his own want of proper care and prudence to such injury as hereinbefore stated."

It is claimed that it was erroneous in that it required the defendant to keep the crossing of a highway or street over which the road ran in such repair that the track might be crossed "*without delay, danger, or injury,*" when the statute requires such companies to place them in "*such state as not to unnecessarily impair its usefulness, *   *   *   and to keep such crossing in repair.*" Such crossings not placed and kept in such condition that persons with vehicles or otherwise may cross them without delay, danger, or injury are not kept in condition in which their usefulness as crossings is not impaired.

In so far as the charge instructed the jury as to the duty to blow a whistle or ring a bell on approaching a crossing, it was in accordance with the statute prescribing that duty.

The third instruction requested by defendant and refused was properly refused, for it assumed the existence of facts controverted, and that these constituted negligence on the part of plaintiff.

The court gave the following charge: "If you find from the evidence that plaintiff, Matula, was guilty of negligence in driving upon the track of defendant's road at the time and under the circumstances he did, yet if you also find that the servants of defendant in charge of its train at the time discovered the danger that the plaintiff had placed himself in, and that they negligently, when they could have prevented it by the use of ordinary care, failed to use all the means in their power to prevent or lessen the injury, and that no injury would have happened to plaintiff if they had used the means in their power and could have stopped the train in time to prevent injury after they had discovered (if they did discover it) that plaintiff could not prevent the injury, that then it was the duty of said servants to prevent such injury; and if you find they did not prevent it or endeavor by all the means in their power to do so, then such a failure would be negligence, and you will so find and for such damages occasioned thereby as the evidence in your opinion of it may show."

This charge states the law to be substantially as repeatedly held by this court.

An examination of the evidence of the engineer does not show a state of facts which would make it improper for the court to submit the issues involved in the charge.

The court gave the following charge: "If you find for the plaintiff under all the law given you in charge, then the measure of damages would be the reasonable cash value of the horses, if you find they or either of them was killed, and 8 per cent interest thereon from the date of the injury, also the reasonable amount of the damage to the wagon with the same interest; also, if you find plaintiff suffered personal injuries, the measure would be such damages as naturally flow from such injuries and are the

immediate result thereof. Also as to the killing of the wife, no interest can be given on claims for loss of wife or for personal injuries to oneself. In arriving at damages for personal injuries, whether to oneself or to one's wife, it is not necessary that any witness should have testified to the amount of such damages in dollars and cents, but you make such estimate from the facts and circumstances in proof before you, if such there are."

We are of opinion that this charge was erroneous.

The damages plaintiff could recover on account of the death of his wife, if entitled to recover, would be the injury resulting to him from her death and none other.

The charge informed the jury that on account of any injuries plaintiff may have received to his person he would be entitled to recover such damages as naturally flowed from such injuries and were the immediate result thereof.

This would embrace damages for physical and mental pain and.every other element of damages existing in such cases, and the charge carries with it the idea that the same elements and same measure for damages would exist in favor of the husband on account of the death of the wife as in his favor for an injury to his own person.

Although the charge did not enumerate the elements for damages, it was erroneous and should .not have been given. The charge referred to in the eleventh assignment of error and given by the court was passed on in Railway v. Kutac, 76 Texas, 478, and held to be improper.

Charges requested by defendant and refused, which are referred to in other assignments of error, were objectionable in form and matter in view of all the issues in the case; and as the judgment will· be reversed it is neither necessary nor proper that we should discuss the evidence nor consider further the other assignments, which could not be considered without doing that.

For the errors noticed the judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 13, 1891.