**LLOYDS CAS. INSURER**

v.

**SHAFER et al.**

No. 10218.

Court of Civil Appeals of Texas.

Austin.

April 21, 1954.

Rehearing Denied May 12, 1954.

Kemper & Wilson, Houston, for appellant.

Bracewell & Tunks, Joe H. Reynolds, all of Houston, John Ben Shepperd, Atty. Gen., Sam C. Ratliff, Asst. Atty. Gen., Austin, J. P. Hart, John C. Marburger, La Grange, C. H. Chernosky, Adolph D. Pavlicek, Houston, for appellees.

HUGHES, Justice.

T. C. Jensen owned a truck and trailer which collided with a State (Texas) High-

way Department truck on State Highway 71 near the town of Ellinger, Fayette County, Texas, on June 2, 1948. As a result of this collision three suits were instituted in the District Court of Fayette County against T. C. Jensen and others by Oather E. Shafer, who was injured in such collision and by those entitled to recover damages for the deaths of Fritz C. Wittman and Joe Bednar who died as a result of injuries sustained in such collision. The State of Texas intervened in each of these suits. In such suits judgments were obtained by the respective plaintiffs and intervener in varying amounts against T. C. Jensen and his codefendants.

The instant suit is a consolidation of three actions brought against appellant, Lloyds Casualty Insurer, by those who recovered the judgments referred to above. The liability of appellant, established by judgment of the trial court, non-jury, is predicated upon a public liability insurance policy (No. 4636) covering a White truck and an endorsement thereon covering a Lufkin trailer issued by it to T. C. Jensen.

Appellant has numerous points of error but they resolve themselves into two principal contentions (1) whether there was any evidence as well as insufficient evidence to support the finding of the trial court that the endorsement on the policy by which the trailer was insured was made before and not after the collision and (2) whether the trailer involved in the collision was a "Lufkin" trailer as named in the endorsement or a "Nabors" trailer, not named in the endorsement, and if a "Nabors" trailer whether this fact precludes recovery on the policy.

We have concluded that the finding of the trial court that

"Prior to the time of the accident of June 2, 1948, in Fayette County, Texas, Paul Lowry of the Leslie Lowry Insurance Agency of Beaumont, Texas, issued an endorsement to policy No. 4636, covering a Lufkin Semi-Trailer."

is so against the great weight and preponderance of the evidence as to be clearly wrong.

The endorsement in question is dated May 29, 1948, three days before the accident, and was executed by Lowry for the Leslie Lowry and Company of Beaumont, appellant's agent. The additional premium for such endorsement was $56.32.

The materiality of this endorsement is shown by a clause in the policy excluding liability "under coverages A and B (involved here) while the automobile is used for the towing of any trailer owned or hired by the named insured and not covered by like insurance in the company * * *."

This May 29 endorsement was received by appellant in Houston on June 4, 1948 by mail from Lowry unaccompanied by any letter of transmission. The envelope containing the endorsement bore two Beaumont stamps of different dates, June 2 and June 3. The June 2 stamp was made by the Lowry Company by the use of a stamp machine. The June 3 stamp was made by the postal department, apparently for the purpose of correcting the erroneous date of June 2.

When the Lowry Company sent to appellant's office its report of business for the month of June it listed as the second item thereon the remittance of $56.32 on policy No. 4636, T. C. Jensen. The date of this transaction was shown as "29" which evidently intended to indicate May 29. This report was received by appellant on July 9, 1948.

Paul Lowry testified by deposition taken in June 1953. He did not personally appear as a witness and no other member of his firm or in his employ gave evidence. We will set out the substance of his testimony material to the issue under consideration.

When asked to give the circumstance surrounding the execution of the trailer endorsement to Policy 4636 Mr. Lowry on direct examination by appellees answered:

"Well of course, you realize that is almost five years ago and I will give you the best of my recollection about this thing. As I recall, and of course having discussed this after the accident

with representatives of Lloyds Casualty Insurer, I talked to Mr Jensen several days prior to that endorsement and discussed with him the possibility he had no coverage on his trailer that he was towing there behind his truck, and he asked me to look into it, and if he did not have it, to issue him coverage on it, which we apparently did.

\* \* \* \* \* \*

"Q. It is your testimony that your conversations and so forth with Mr. Jensen in regard to this additional coverage transpired prior to May 29, 1948, which purports to be the effective date of this endorsement? A. Yes, I think my conversation was prior to that time.

"Q. Do you recall just how long it might have been prior to this May 29, 1948 endorsement? A. It was not long before. The usual operation there, of course, would be I would give the order, probably pencil it out to the girl writing the policies or writing the endorsements and she would go on and accomplish the endorsement there that I would write out for her.

"Q. You were at that time fairly familiar with Mr. Jensen's coverage over all of his operations, were you not? A. Yes, I was fairly familiar.

"Q. An this endorsement arose out of the discussions which you have told us about? A. Yes.

"Q. And that is what prompted this endorsement as you recall the situation? A. Yes.

\* \* \* \* \* \*

"Q. Do you recall—these are questions with regard to this endorsement to Policy 4636, showing effective date May 29, 1948, which has been marked plaintiff's Exhibit 'B'. I will ask you Mr. Lowry, if you recall when the information contained in that endorsement was forwarded to the insurance carrier? A. You are speaking of this endorsement that you present me there? Yes, I recall there was some

delay in forwarding that endorsement to the company. I attempted in the past to explain to the company why the delay was. It has been about five years ago and I don't know. I think it was forwarded to the company two or three days after the endorsement's effective date maybe four days. I do not know the exact date it was sent but it was after the endorsement became effective.

"Q. Do you know whether or not it was after the date of the accident which occurred on June 2, 1948? A. I believe possibly the records of the company may reflect; if it was after the accident, I don't know. I do recall discussing it with Mr. Castle.

\* \* \* \* \* \*

"A. \* \* \* I do not know when Mr. Jensen was sent that endorsement. As I recall the discussions we had on this case before, it was before May 29th, if I recall it right. It was on a Saturday.

"Q. Prior to May 29, 1948? A. I don't know but I believe it was on a Saturday. Now, whether the mail went out of the office on Saturday or not, I don't know. On Saturday at that time we worked rather with a limited staff on a Saturday, and whether the mail went out or whether Mr. Jensen got the mail, whether it was sent to him on the 29th, I don't know. I am inclined to believe the endorsement was prepared on the 29th because it would not have the effective date otherwise."

On cross-examination he testified:

"Q. Well then, you do recollect and you are now swearing you did have a conversation a day or two before this accident, with Mr. Jensen, under which he purchased this endorsement here, bearing plaintiff's Exhibit 'B', which is endorsement covering a Lufkin semi-trailer—isn't that right? A. That is my recollection, yes.

"Q. You are positive about that? A. I didn't say anything about being positive. I said that is my recollection about it and so forth."

On July 29, 1948, appellant wrote and sent Lowry and Company the following letter, of which Paul Lowry had knowledge:

"Leslie Lowry & Company
950 Pearl Street
Beaumont, Texas

"Gentlemen:
 "Re: Policy 4636
 T. C. Jensen

"We note that you have reported the premium for the trailers added to the above policy in your account current. We think you should remove this from your account current and mark this endorsement 'spoiled' since we have an affidavit from the assured that he did not authorize this insurance and since this endorsement was written and dated back after an accident had happened we are not agreeable to assuming any liability under this endorsement, and, therefore, do not wish to collect the premium on it.

"Thanking you for your co-operation in this respect, we are

 "Very truly yours,
 Lloyd's Casualty Insurer
 By Warren P. Castle"

This letter went unanswered and thereafter and in the August 1948 report Lowry and Company took credit for the $56.32 return premium on the trailer endorsement on the Jensen policy No. 4636.

Regarding the business routine of his office Mr. Lowry testified:

"A. Well, we would enter the endorsement on the account which we always kept with the company, which shows the business written for that period of the month, deducting our commission from it and sending the account to them when it became payable. I don't recall the time payment plan we had with Lloyds but whenever it became payable, we paid it with a lump sum payment—that is, with other business.

"Q. You did not handle each individual policy with Lloyds on an individual basis but on a monthly accounting basis? A. Yes, there might have been some exceptions to that. I don't know but in the ordinary course of business, it was on a monthly basis.

 * * * * * *

"* * * in your course of dealing, in issuing coverage of any kind, isn't it a further fact that on the day of the issuance of any coverage, you send in whatever you issue on the day that you issue the coverage? A. In the normal course of our business, yes.

"Q. And you did in effect do that, didn't you? A. What do you mean?

"Q. I mean that you follow that procedure. A. It is the normal course of our business. Ordinarily, we get all business transacted out of the office that day, yes.

 * * * * * *

"Q. Now, as you accounted for payment of premiums on coverage that you in fact sold, and you say you sold coverage for Lloyds Casualty Insurer —as you accounted to Lloyds Casualty for any coverage that you might have sold, when did you account for it in respect to the time of coverage—the same month you sold the coverage or did you send in any type of accounting at that time? A. Yes, sir, the coverage usually is accounted for. If you write business, say January, why you account for all the policies that are written in January on account current as we call it, listing the policies and setting them forth on the accounts.

"Q. During the month in which the business is sold? A. Yes, sir.

"Q. Now, that account current doesn't necessarily mean that it was paid off at that time—isn't that right? A. No, it means you account for the business and pay for it at a later date.

I don't recall what period of time we had with the various companies to pay.

"Q. But the course of dealing was to account during the month in which you sold the business to the company on an account current for that particular item, whatever that item was? A. To render an account current to the company on it.

"Q. During the month in which the business was sold? A. There were some exceptions, of course.

"Q. What exceptions? A. There are some exceptions generally in the business. An agent can write some business—I don't know of any exceptions in my particular case. I am just pointing out the general practice. An agent at the end of the month may enter the entire previous month. Really, I don't believe there was any exact accounting with the company as to the agent's account and the company account."

The affidavit of T. C. Jensen referred to in the letter from appellant to Lowry was given in La Grange, Texas, on June 3, 1948, the day following the accident. The Notary Public before whom the affidavit was sworn appeared as a witness and testified to the authenticity of the instrument.

This affidavit was made at the instance and request of and in fact was typed by M. J. Flahive, a professional investigator who was employed by appellant to investigate the collision involved here. T. C. Jensen was not present when the collision occurred. At such time his truck and trailer were being operated by his employee Ben Blosman.

The affidavit of Mr. Jensen follows:

"This will certify that my name is T. C. Jensen and I own and operate my own trucks and haul only my own products. I own at this time 1 1947 White truck which I bought about Nov. 7, 1947. At the time I bought this truck I already had a Nabors trailer which is a 30 ft 10 inch trailer. I formerly used this trailer with the Dodge which I traded in on my 1947 White. At the time I bought the Insurance Policy on my 1947 White truck I assumed I also was getting insurance for liability and property damage on the trailer as I told the agent I wanted both units covered at the time I bought the Policy on my 1947 White. Ever since Nov 1947 I have been using my 1947 White in towing and propelling my Nabors trailer. I just went ahead on the basis that my truck and trailer were covered and insured by liability and property damage insurance. The last time I saw my agent Lowery in Beaumont was Saturday May 29, 1948 at which time I saw my agent Lowery at the office of the Coastal Packing Co in Beaumont at which time I insured my new Oldsmobile passenger car with Mr. Lowery. At that time I told Lowery to put cargo on a Coastal Packing Co truck and trailer but I had absolutely no coversation at all with Lowery or anybody else about putting any new insurance on my Nabors trailer because as I have stated above there never was a doubt in my mind but that my trailer was already covered with liability and property damage insurance. I do know that ever since Nov 1947 I was operating my 1947 White truck and Nabors trailer involved in the accident of yesterday and all of this time I was operating this equipment under the impression that both truck and trailer were insured all the time. I did not ask Lowery or any other agent to endorse insurance on to my Nabors trailer on Saturday May 29, 1948 or at any other date after May 29, 1948 as I had no occasion to ask for Insurance on my trailer involved in the accident of June 2, 1948 because I honestly figured my trailer was already insured ever since I bought the Policy originally from Lowery back in Nov 1947. At the time of the accident of June 2, 1948 my 1947 White was hauling my Nabors trailer and it was empty as my driver Ben Blosman was going to Smithville, Texas for me. I have been to the

scene of the accident and it looks to me that the State Hiway truck was right in the middle of a bridge near Ellinger and in fact in Ellinger City Limits. The road is straightaway from some distance back from the point of the accident. I want to sewar definitely that there was no intention on my part to run this Nabors trailer of mine without insurance since Nov. 1947 as I was under the impression ever since Nov 1947 that agent Lowery had insured my truck and trailer involved in this accident of June 2, 1948 for both liability and property damage. I did not order any trailer insurance put on my Nabors trailer involved in this accident on Sat May 29, 1948 or any date after that date as there was no occasion for me to order liability or property damage insurance on my Nabors trailer on Sat May 29, 1948, because I was under the impression that I had always been covered for liability and property damage insurance on my 1947 White truck and trailer ever since Nov. 1947. There was no discussion by me Sat May 29, 1948 or any date thereafter about placing any endorsement on my Policy to cover my trailer for liability and property damage and in fact my discussion Sat May 29, 1948 with Lowery had to do with my Olds insurance and the insurance on Coastal Packing Co's truck.

"I have checked with my driver Ben Blosman and find that he had a valid driver's license. I have not been able to find any evidence of any real criminal negligence on the part of my driver in this case altho he now has been charged with negligent homocide. The accident of June 2, 1948 involving my 1947 White and Nabors trailer took place about 4:30 p. m. I am advised. I have read all of the above facts and all of the facts on the reverse side of this page and all of the facts on both sides of this paper are true and correct." [1]

Mr. Jensen did not personally appear as a witness on the trial below but his deposition taken on June 2, 1953, was admitted in evidence. He testified that the truck and trailer involved in the accident belonged to him and that the trailer was a "Lufkin" trailer and that at the time of the collision he owned no other truck or trailer.

When questioned on direct examination by appellees regarding the May 29, 1948 trailer endorsement on policy 4636 Mr. Jensen testified:

"A. You see, I bought a new Oldsmobile and seen Leslie out at the office one Monday morning, and I think he was bringing some policies on some other trucks or cars, and I told him I got a new Oldsmobile—'Now, be sure and check the policies on my Oldsmobile and trucks—this is different from the company; this is a different automobile.' and he said, 'Okey.'

"Q. Following that conversation with him, he issued you this additional coverage on the trailer? A. Yes, sir, at the same time.

\* \* \* \* \* \*

"Q. Simply this: Had you received this endorsement—had it come to your attention and possession prior to the date of this accident on June 2, 1948, as well as you recall? A. Let's see. The accident happened on a Wednesday. I think Mr. Lowry brought that out to our office Saturday morning.

"Q. Prior to the date of the accident? A. Yes. You see, at that time, I remember—you see, I am only in town Saturday, Sunday and Monday. Those are only three days I was in Beaumont. I was never here Wednesday, Thursday and Friday. I was never here then and those are the only three days I was in town—Saturday, Sunday, and Monday.

"Q. It was one of those three days? A. It has to be one of those three

1. This last sentence is in large type in original affidavit.

days. It could hardly be Sunday. Sometimes I was at the office on Sunday but I am sure it was Saturday."

On cross-examination by appellant his testimony on this subject was:

"Q. At the time you bought the Oldsmobile, did you have any conversation about ordering any other insurance from the Lowry Agency through anybody out there with regard to this truck and trailer—your truck? A. That same day?

"Q. Yes. A. I wouldn't know. We had two or three and a couple of salesmen's cars and things like that. I don't know when they came out— I couldn't remember dates.

"Q. But you didn't buy at that time any more trailer insurance because you thought you had already bought that at the time you got the truck—isn't that right? A. Did I buy any more trailer insurance?

"Q. I say you didn't at the time you bought your insurance on the Oldsmobile—you did not at that time buy any more insurance for a trailer? A. I told him to check my trailer, all my insurance policies, everyone of them, on that Monday. That was Monday I was in town. I says, 'Be sure to straighten them out quick. If anything's wrong because', I said, 'we are paying two thousand dollars a year for insurance' you see we have to insure cattle and different things out there, machinery—and I said, 'No use having insurance unless it's all checked over.'"

Mr. Jensen explained his affidavit by testimony of this character: That he was worried and upset—his driver was in jail, his cattle were scattered, one man was dead and others were in the hospital—his truck and trailer wrecked—also that he was high pressured by Mr. Flahive who, according to Mr. Jensen, represented his name to be "Blankenship" and threatened to walk out and leave unless the statement

was made—and that he, Jensen, gave the affidavit to be rid of him—that the statement was read to him by the investigator and not by the witness because he did not have his glasses and could not read without them—that if he was given a copy of the affidavit he lost it mighty quick.

Further regarding the affidavit Mr. Jensen testified:

"A. He read it up there because I didn't have my glasses to read it. He read it up there. Somebody's done a little mis-printing here. It wasn't read that way to me. This is got 'put cargo on Coastal Packing Company', but I said nothing about insurance being put on my truck. Now, here is something somebody put a 'no' on. There was no discussion by me on Saturday, May 29, 1948, about the trailer. It was about all of them. Who typed that —I remember he had a typewriter with him. I don't know what I signed up there at that time. I wouldn't say that's the right thing or the same thing —I was under a strain, that truck wrecked, that man in jail.

"Q. Well, you wouldn't give this company an untruthful statement immediately following the accident, would you? A. I wouldn't say I wouldn't try to give them an untruthful statement and I wouldn't say at that time I was even in my right mind.

\* \* \* \* \* \*

"Q. You weren't interested in giving the man who came to investigate the accident any type of false statement at that time, were you? A. No, sir, I wasn't going to give any false statement."

 The above, we believe, is a fair summary of all the evidence relating to the issue of when the trailer endorsement was issued.

When we consider the office routine of Lowry and Company, the misdated envelope of June 2, 1948, the delay in forwarding the endorsement, the unanswered and unpro-

tested charge of appellant that Lowry and Company had antedated the endorsement, the weak and hazy deposition evidence of Mr. Lowry and Mr. Jensen given five years after the matters testified about and when we consider the affidavit of Mr. Jensen given the day after the wreck and the apparent reasonableness and truthfulness of it we cannot in good conscience accept the finding of the trial court on this issue.

We have the same means of judging the credibility of the witnesses Lowry and Jensen and the weight to be given their testimony as did the trial judge. This because they did not personally appear. Galveston, H. & S. A. Ry. Co. v. Matula, 79 Tex. 577, 15 S.W. 573.

Concerning the statement made by Mr. Jensen in his affidavit that he had assumed since buying insurance on his White truck in 1947 that the trailer was also insured there can be no doubt but that this statement comports with reason and truth. The White "truck" to which the trailer was attached is, without the trailer, nothing but a cab and, in the words of Mr. Jensen, the truck was

. "No good without a trailer. If you .were to haul as much as a sack of sand, you would have to tie it on. You have no place to put anything unless in the cab. * · * * No place to haul any-·thing. It had a fifth wheel to hang the trailer on."

The truck was of little practical value without the trailer and the insuring of the truck alone was an apparent waste of money, so for Jensen to assume that when he insured the truck that the attached trailer was also insured was but natural. This leads us to conclude that Jensen's conversation with Lowry asking him to check his trailer insurance and straighten it out quick if anything was wrong was made after the accident and after his attention had been called to a possible defect in his policy by the insurance investigator who prepared the affidavit of Jensen. Otherwise why would a man who testified that he never read his insurance policies be so suddenly concerned about a quick check to ascertain if anything was wrong? No explanation other than the one suggested by us is justified by the record.

While we are without power to rewrite this policy or to prescribe provisions to be contained in other policies it is hoped that those who do have the latter power will take steps to prevent recurrence of the inequitable result of this case.

On the second feature of the case the trial court found that the parties intended to insure the trailer involved in the accident and that whether it was a Nabors or a Lufkin trailer was immaterial.

Jensen owned only one trailer to which the endorsement could have applied and the evidence is that the premium for a Nabors and a Lufkin trailer are the same and there is no evidence that the risk of the insurer is increased by the towing of one or the other of these named trailers.

We believe the trial court's findings above noted are sufficient to establish liability under the endorsement as written, however in the event of another trial we suggest that the pleadings be broadened so as to reform the description in the endorsement in accordance with equitable principles of reformation of written instruments for mutual mistakes.

The judgments appealed from are reversed and this cause is remanded.

Reversed and remanded.