**COTTON BELT INSURANCE COM-
PANY, Inc., Appellant,**

v.

**A. CAMPDERA & CO., Inc., Appellee.**

No. 15202.

United States Court of Appeals,
Fifth Circuit.

Dec. 29, 1954.

Bryan F. Williams, Galveston, Tex., Stanley E. Neely, Dallas, Tex., Locke, Locke & Purnell, Dallas, Tex., Williams & Thornton, Galveston, Tex., of counsel, for appellant.

Dan R. Rogers, William H. Neary, Dallas, Tex., Thompson, Knight, Wright & Simmons, Dallas, Tex., for appellee.

Before HUTCHESON, Chief Judge, RIVES, Circuit Judge, and DAWKINS, District Judge.

HUTCHESON, Chief Judge.

The suit for loss and damage to two lots of seed cotton which had been bought some time prior to October 23, 1952, was on an oral agreement effective at midnight August 31, 1952, insuring plaintiff's subsidiary and assignor against loss and damage by fire to seed cotton, cotton seed, and cotton in bales, bought and ginned in Hermosillo, Mexico, during the 1952 harvest season. Of the seed cotton purchased, one lot consisted of 2816 tons which was damaged by fire on October 23, 1952, the other of 621 tons which was damaged by fire on December 5, 1952.

The complaint alleged, and the answer admitted, that, notified in each instance of the loss, the defendant assumed full responsibility for it, took over the problem of salvage, and, proceeding to adjust the loss, advanced $420,000, leaving a balance still due.[1]

---

1. Par. VIII of the complaint, the truth of whose allegations defendant admits, in its answer, alleges:

"Defendant admits the existence of the oral contract of insurance covering the Mexican cotton herein described and ad- mits fire coverage in excess of the amount herein sued for. The sole issue between the parties based on said oral contract of fire insurance is the issue of the amount and extent of loss and damage for which defendant is liable."

Upon the single issue thus defined in Paragraph VIII, note 1, supra, and agreed to by defendant in its answer, the cause went to trial, and was submitted to a jury, on a charge to which no exception was taken by defendant, and there was a verdict and judgment for $140,000 and interest.

Appealing from that judgment, the defendant, appellant, is here presenting as grounds for reversal two specifications of error. The first [2] of these complains of a ruling of the court refusing to admit testimony as to the oral contract. The second [3] complains of a ruling refusing to exclude and to strike testimony as to the cost of the seed cotton.

The question the first specification poses arises in this way. After Olivard, the representative of plaintiff company, had testified that the contract for insurance was oral, he was asked on cross examination the following question:

"What was the contemplated contract to be?"

and gave the answer:

"The contract was to more or less follow the same procedure we have with the U. S. A. companies.
\* \* \* "

whereupon counsel for plaintiff objecting to the inquiry as immaterial, counsel for defendant stated in substance that it did not contest that the contract was oral, but went on to say:

"Now I want to find out what kind of an oral contract was actually made."

After considerable further colloquy with the court, defendant's counsel stated:

"I want to know whether or not the policy provisions which are contained in the policies on cotton insurance [issued by American companies on cotton] would apply to this case, because if they do, they fix a time at which the value of the insured commodity must be fixed, that is, five days after the fire, that is the provision in the American policy and I was trying to establish here that it applies to this case."

The plaintiff's counsel continuing to object, defendant was not permitted to interrogate the witness further in respect to the matter.

This is the record on the question the second specification poses. Plaintiff's witness on the issue of value of the seed cotton, A. Marin, having testified on direct examination as to the value of the seed cotton destroyed in the two fires, in answer to the court's question, "What was the value", answered: "It was the cost of the cotton, that is the value." He was then asked on cross examination:

"I understand that you valued that seed cotton on Oct. 2, 1952, at 21 pesos. Is that correct? A. Yes, sir.

"Q. How did you arrive at that figure? A. That was the cost to us of the cotton.

"Q. That was the cost you paid for it? A. That is the value."

Whereupon the defendant moved to strike the testimony because the cost cannot be considered in arriving at the market value of the cotton seed destroyed, the judge overruled the objection, and defendant excepted.

Plaintiff's witness, A. Campdera, having testified substantially the same way on direct examination, stated when asked

---

2. "The Court erred in refusing to allow appellant to prove that provisions in policies of fire insurance on cotton written by companies in the United States fixing the fifth day after a loss as the time at which the value of the lost property must be determined were a part of the insurance contract made by appellant with appellee and its subsidiary, the Mexican Corporation."

3. "The Court erred in refusing to strike and allowing to remain in the evidence the testimony of the witnesses, Marin and Campdera as to the value of the seed cotton involved in this case based alone upon its cost to Appellee and its subsidiary, The Mexican Corporation."

on cross examination how he arrived at his values of the seed cotton:

"Because I say that is what we say it was worth and it cost us."

"Q. You arrived at it by what you paid for it? A. Yes".

Whereupon defendant objected to the evidence, the objection was overruled, and the witness was asked these further questions:

"Q. So your figures are based entirely upon what you paid for the seed cotton and the cotton seed. A. Yes, sir."

Defendant again objecting to the testimony, the objection was overruled, and defendant excepted.

Thereafter, defendant's witnesses were asked the orthodox and regular questions as to the market price of the seed cotton at the gin in Mexico on October 23rd. Stating: that the seed cotton had a market value at Hermosillo; and that, based upon their knowledge of prices paid, they were familiar with the market value of the seed cotton at the time of the two fires; they gave a figure considerably less than the price which plaintiff's witness had given as the cost of the cotton to them some months before. Testifying in the same way, they fixed the market value of the seed cotton on Dec. 5th as the same as on October 23rd.

On cross examination, defendant's witnesses adhered to the views given on direct, that there was a market at Hermosillo and that they knew the market value, there, of the cotton seed and seed cotton at the time of the two fires, and when the defendant rested, counsel for plaintiff stating, "Our theory being that we are entitled to the value of our cotton, we attempted to make a showing that there was no market in the conventional sense. We are trying to show that there was no market in a legal sense in Hermosillo on October 23rd, for the amount of cotton and the quality of cotton which was destroyed on October 23rd, by fire", requested the court to permit it to do so, and this request was denied by the court.

The district judge, submitted the case to the jury on the single issue, "What was the reasonable market value at the time the cotton was destroyed?", saying, "The plaintiff says $150,000, and the other fixes a figure somewhat less than $150,000."

In the course of the defendant's argument, he stated:

"I think the court is going to tell you your duty is going to be to find the market value of the cotton seed at the time it was destroyed. My view is that the market value is what is in question, not the value Mr. Campdera might place on it, not the value of what it cost him because he might have paid greatly in excess of the actual market value or he might have paid less. We ask you to consider the testimony of our witnesses as bearing directly on market value and reject the values as advanced by Mr. Campdera based upon his cost of the cotton."

For the reasons hereafter briefly stated, we are of the opinion that while the first specification does not present reversible error, the second does.

■ Of the first specification, it is sufficient for us to say that while, if defendant had either in his pleadings or his evidence made an issue of the five day provision after loss for determining value, it would have had the same right to inquire whether the oral contract fixed that date for determining value, as it would have had to inquire as to any other term of the oral contract as to which an issue was made. It did not, however, do so, and, therefore, cannot assign as prejudicial error the ruling complained of. In addition, it is quite clear that if the ruling was error, it was not prejudicial because defendant's own witness testified that the value of the seed cotton on December 5th was the same as on October 23rd, and no witness testified that there was any difference between the value of the respective lots of seed cotton on the dates of their damage by fire and that on a date five days thereafter.

■ When it comes, however, to the second specification, defendant is on strong ground. The law in Texas is clearly stated in International-Great Northern Ry. Co. v. Casey, Tex.Com. App., 46 S.W.2d 669, 670, thus:

"Where property is destroyed or injured, which has a market value, this must be shown by the owner as the measure of damages".

Many other cases to the same effect may be cited.[4] In Lincoln v. Packard, 25 Tex. Civ.App. 22, 60 S.W. 682, 683, which was an action to recover for a conversion of furniture, including a piano, it was held that testimony of the owner as to what he had paid for the piano was improperly admitted, the court saying:

"If the property had no market value, and the proper inquiry had been as to its reasonable value at the date of the conversion, it would have been proper to have allowed the jury to consider its value when new, in connection with the wear and tear, in order to arrive at its reasonable value at the time of the conversion, *but in no event should the jury have considered what appellees paid for the property*. They may have bought the property for less than its value, or they may have paid for it a great deal more than its actual value, and the amount paid for it would form no just basis for the ascertainment of its present value, unless such amount was shown to have been its value at the time of the purchase." [5] (Emphasis added.)

■ Without doubt the ruling complained of was erroneous and it was aggravated by the charge of the court in that, while clearly stating the issue as, "What was the reasonable market value at the time * * *?" in further stating to the jury in effect that the plaintiff says the market value was $150,000 and the defendant fixes the figure at somewhat less, the court deprived the defendant of the benefit of its argument that plaintiff's testimony was not as to market value but as to cost, and thus aggravated the seriousness of his former ruling in admitting the testimony over objection.

Appellee does not even contend that the testimony as to cost was the equivalent of the testimony as to market value. Its claim is that there was no market value at Hermosillo at the time of the fire and, therefore, it was proper and necessary to prove the actual value and that the testimony of his witnesses was directed to that point. However, there was no proof that there was no market value at the time of the fire. Indeed, the proof was to the exact contrary. It is true that plaintiff did endeavor to make the proof that there was no market value, but the judge refused to let him do so.

Because of the error, in permitting the plaintiff's witness to testify to the cost to them of the seed cotton, in refusing to strike the testimony, and in referring to it in the charge as proof of market value, the judgment is reversed and the cause is remanded for further and not inconsistent proceedings.

4. American Ins. Co. v. Bell, Tex.Civ.App., 116 S.W.2d 877; Galveston, H. & S. A. Ry. Co. v. Matula, 79 Tex. 577, 15 S.W. 573; Id., Sup., 19 S.W. 376, 377; Pioneer Building & Loan Ass'n v. Compton, Tex.Civ.App., 138 S.W.2d 884; Allis-Chalmers Mfg. Co. v. Board, Tex.Civ. App., 118 S.W.2d 996.

5. Galveston, H. & S. A. Ry. Co. v. Levy, 45 Tex.Civ.App. 373, 100 S.W. 195; St. Louis & San Francisco Ry. Co. v. Blocker, Tex.Civ.App., 138 S.W. 156; American Indemnity Co. v. Jamison, Tex.Civ. App., 42 S.W.2d 801; Wichita Falls & W. Ry. Co. v. Wyrick, Tex.Civ.App., 147 S.W. 730.